**Samuel MYERS, Plaintiff–Appellant,**

v.

**The BENNETT LAW OFFICES, Defendant–Appellee,**

**and**

**Doug McCallon, Defendant.**

**Timothy Myers, Plaintiff–Appellant,**

v.

**The Bennett Law Offices, Defendant–Appellee.**

Nos. 99–15873, 99–15902.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 12, 2000*

Filed Feb. 5, 2001

---

* The panel unanimously finds these cases suitable for decision without oral argument. *See*

Fed. R.App. P. 34(a)(2).

Jeffrey I. Pitegoff, Las Vegas, Nevada, for plaintiff-appellant Samuel Myers.

Mitchell D. Gliner, Las Vegas, Nevada, for plaintiff-appellant Timothy Myers.

Daniel F. Polsenberg, Las Vegas, Nevada, for the defendant-appellee.

Appeal from the United States District Court for the District of Nevada; David Warner Hagen and Philip M. Pro, District Judges, Presiding. D.C. No. CV 98–01178 DWH, D.C. No. CV 98–01179 PMP.

Before: DAVID R. THOMPSON, O'SCANNLAIN, and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

## I.

■ In these consolidated appeals, we are asked to decide whether the district court erred when it dismissed these actions for lack of personal jurisdiction and improper venue. We review the district court's dismissals de novo. *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1319–20 (9th Cir.1998) (personal jurisdiction); *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 504 (9th Cir.2000) (venue). The district court had federal question jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331. We have jurisdiction over the district court's final orders pursuant to 28 U.S.C. § 1291, and we reverse.

## II.

In a prior state court action, Jim Barber ("Barber"), who was a paralegal with the Bennett Law Offices ("Bennett"), sued Automated Recovery System ("ARS") (a company owned and operated by both Timothy and Samuel Myers) for unlawful debt collection practices. During the course of that lawsuit, Barber contacted National Data Research ("NDR"), an investigative information service provider, and allegedly ordered a credit report on ARS using one of Bennett's order forms and on the Myerses through an oral communication with Terry Sweet, NDR's president. The Myerses claimed that such search was for an improper purpose and brought these two actions against Bennett alleging violation of the Fair Credit Reporting Act ("FCRA"). Both Plaintiffs, Samuel Myers and Timothy Myers, allege that they are residents of Nevada. Bennett is a Utah corporation with its principal place of business in that state.

Based on its status as a Utah resident and its alleged lack of contacts with Nevada, Bennett moved to dismiss each of these actions for lack of personal jurisdiction and improper venue. Adopting identical reports and recommendations of a magistrate judge in each case, the district court dismissed both cases. Plaintiffs appeal.

## III.

### A.

■ When personal jurisdiction is challenged by motion as an initial response, and "the [district] court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977) (footnote omitted). Thus, in order to defeat Bennett's motions to dismiss for lack of personal jurisdiction, at this stage, Plaintiffs only needed to make, through their pleadings and affidavits, a prima facie showing of the jurisdictional facts. *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990).

**1072**

### 1.

■ "When subject matter jurisdiction is premised on a federal question, a court may exercise specific jurisdiction over a defendant if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirement of due process." *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 589 (9th Cir.1996).

Federal Rule of Civil Procedure 4(k)(1)(A) provides that "[s]ervice of a summons ... is effective to establish jurisdiction over the person of a defendant [ ] who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed.R.Civ.P. 4(k)(1)(A). Therefore, in order to determine whether jurisdiction is authorized, we look to Nevada's long-arm statute. The Nevada Supreme Court has interpreted Nevada's long-arm statute to reach the limits of federal constitutional due process. *See Judas Priest v. Second Judicial Dist. Court*, 104 Nev. 424, 760 P.2d 137, 138 (1988). Accordingly, the only relevant analysis is whether Bennett has certain minimum contacts with the forum state so as to satisfy specific jurisdiction.[1]

■ We use a three-part test to evaluate the nature and quality of Bennett's contacts for purposes of specific jurisdiction: First, some action must be taken whereby Bennett purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's law. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). Second, the claim must arise out of Bennett's forum-related activities. *See id.* Third, the exercise of jurisdiction must be reasonable. *See id.*

### 2.

#### a.

■ The Supreme Court has established that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California."); *Brainerd v. Governors of the Univ.*, 873 F.2d 1257, 1259 (9th Cir.1989) (finding purposeful availment when the defendant "intentionally directed his activities into the forum."). Our most recent discussion of the *Calder* "effects test" is found in *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir.2000). In that case, we concluded that:

> In *Calder*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis.... Subsequent cases have struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction. We have said that there must be "something more," but have not spelled out what the something more must be.
>
> We now conclude that "something more" is what the Supreme Court described as "express aiming" at the forum state. Express aiming is a concept that in the jurisdictional context hardly defines itself. From the available cases, we deduce that the requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.

*Id.* at 1087 (citations omitted). Accordingly, we focus our analysis on whether Plaintiffs have made a prima facie showing that Bennett knew that its allegedly wrongful acts were aimed at Nevada residents.

---

1. No one argues that Bennett is subject to general jurisdiction in the state of Nevada or that Bennett somehow consented to jurisdiction there.

#### i.

 As a preliminary matter, Bennett argues that we may not consider Barber's acts in our analysis because Barber allegedly acted outside the scope of his employment. We reject that argument for two reasons. First, Plaintiffs have made a prima facie showing that Barber had at least apparent authority to request the credit reports and, as such, should be considered the agent of Bennett regardless of whether authority was actually given.[2] *See, e.g., Sher,* 911 F.2d at 1362 ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."); *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.,* 197 F.R.D. 112, 122 (D.Del.2000) (finding that evidence that an agent had apparent authority to act on the principal's behalf was sufficient to exercise personal jurisdiction over the principal). Second, even if actual or apparent authority is lacking, Plaintiffs

have also made a prima facie showing that Bennett ratified the acts of its agent.[3] *See Wessels, Arnold & Henderson v. National Med. Waste, Inc.,* 65 F.3d 1427, 1433 (8th Cir.1995) (finding that acts of agent outside the scope of his employment may be imputed to principal for purpose of personal jurisdiction if shown to have been ratified after the fact). Therefore, for the purpose of personal jurisdiction analysis, we impute the acts of Barber to Bennett.

#### ii.

 Looking at the totality of Bennett's conduct, Plaintiffs have made a prima facie showing that Defendant's conduct was "expressly aimed" at the forum state. *See Calder,* 465 U.S. at 789, 104 S.Ct. 1482. First, Bennett acted intentionally when it sent its request for a credit inquiry to NDR. Also, the request was "expressly aimed at [Nevada] because it individually targeted" the Myerses who Bennett knew were Nevada residents.[4] *Bancroft &*

2. A party claiming apparent authority of an agent must prove (1) that the acting party subjectively believed that the agent had authority to act for the principal and (2) that the subjective belief in the agent's authority was objectively reasonable. *See Great Am. Ins. Co. v. General Builders, Inc.,* 113 Nev. 346, 934 P.2d 257, 261 (1997). Furthermore, apparent authority, including a third party's reasonable reliance on such authority, is a question of fact. *See id.* Here, the declaration of Terry Sweet suffices to establish a prima facie case of apparent authority. In that declaration, Sweet states that "an employee of Bennett Law Offices, Jim Barber, orally requested ... the credit reports of both Timothy Myers and Samuel Myers," and that Sweet would not have provided them "absent the request from Bennett Law Offices." Accordingly, Plaintiffs are entitled to the inference that Barber had apparent authority to request the credit report.

3. Plaintiffs provided an itemized invoice by NDR, indicating next to Plaintiffs' names that a credit report had been retrieved. Furthermore, Plaintiffs have provided evidence that the invoice was paid in full by Bennett, without any objections. Thus, Plaintiffs are entitled to the inference that Bennett was aware that Barber had requested the credit reports of Plaintiffs, but yet failed to do anything about it. In that respect, the Nevada Supreme Court has stated that

[w]here there is a duty to speak, silence can raise an estoppel quite as effectively as can words. A duty to speak arises when another is or may come under a misapprehension regarding the authority of the principal's agent. Under such circumstances, the principal is obligated to exercise due care, and to conduct himself as a reasonably prudent business person with normal regard for the interests of others. Thus, a person remaining silent when he ought, in the exercise of good faith, to have spoken, will not be allowed to speak when he ought, in the exercise of good faith, remain silent. Similarly, silence or failure to repudiate an agent's representations can give rise to an inference of affirmation.

*Goldstein v. Hanna,* 97 Nev. 559, 635 P.2d 290, 292 (1981) (citations and internal quotation marks omitted). Therefore, Plaintiffs have adduced a prima facie case of ratification.

4. Bennett argues that Samuel Myers is not actually a Nevada resident. To support this assertion, Bennett points to the affidavit of Barber which states that "Samuel Myers, stated in my presence and in his deposition that he actually resides in California." Samuel Myers' complaint, however, clearly identifies him as a Nevada resident. Therefore, this Plaintiff has established a prima facie case that he his a resident of Nevada.

*Masters, Inc.*, 223 F.3d at 1088. Therefore, it is indisputable that Bennett intentionally aimed its conduct at Nevada. It is also apparent that the effects of Bennett's conduct were felt in Nevada. The district court refused to place the locus of the injury in Nevada because it found that the "event complained of does not exist in Nevada." Instead, the district court found that the injury occurred wherever one would access Plaintiffs' credit reports. This conclusion is erroneous.

■ The FCRA is intended to safeguard against the improper reporting of information on a credit report (either by the credit reporting agency or by the furnisher of credit information) and against the improper disclosure of a credit report. *See* 15 U.S.C. § 1681(b) (stating that it is the purpose of the FCRA to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information"); *see generally id.* §§ 1681b–1681s–2.[5]

■ When a consumer brings an action for violation of the disclosure provisions of the FCRA, the Act's purpose of protecting consumer confidentiality is implicated. In that respect, such cases are akin to invasion of privacy cases under state law–cases where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential. We implied so in *Hansen v. Morgan*, 582 F.2d 1214, 1217 (9th Cir.1978) (finding that the plaintiffs' complaint, which alleged willful and negligent failure

to comply with the FCRA and thus unlawfully violated the plaintiffs' right to privacy, stated a valid claim), and at least three of our sister circuits have agreed with that characterization. *See Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir.1998) (upholding a damage award in an action brought under the FCRA based on the emotional distress caused by the defendant's invasion of privacy into the plaintiff's credit report); *Yang v. Gov't Employees Ins. Co.*, 146 F.3d 1320, 1322 (11th Cir.1998) (recognizing FCRA's dual purpose of facilitating accurate reporting and of protecting privacy); *Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1370 (10th Cir.1987) ("By enacting the FCRA, Congress intended to prevent invasions of consumers' privacy.").

"In the 'right of privacy' cases the primary damage is the mental distress from having been exposed to public view." *Time, Inc. v. Hill*, 385 U.S. 374, 385 n. 9, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). That mental distress can only be felt where Plaintiffs' "sensibilities" reside-that is, Nevada. *See Bils v. Nixon, Hargrave, Devans & Doyle*, 179 Ariz. 523, 880 P.2d 743, 746 (1994) ("the only place an 'event' can occur constituting a violation of [an Arizona resident's] right to privacy is Arizona."). Accordingly, "the brunt of the harm, in terms both of [Plaintiffs'] emotional distress and [sensitivities], was suffered in [Nevada]. In sum, [Nevada] is the focal point both of the [credit report inquiry] and of the harm suffered." *Calder*, 465 U.S. at 789, 104 S.Ct. 1482.

Pursuant to the foregoing discussion, we find that Bennett's retrieval of Plaintiffs'

---

5. Almost all of the FCRA's provisions address the dual purpose of accuracy and confidentiality. *See, e.g.,* 15 U.S.C. § 1681b (listing the exclusive permissible purposes for the dissemination of consumer reports); *id.* § 1681c (limiting information that can be included on a credit report); *id.* § 1681d (requiring consent for investigative credit reports); *id.* § 1681e (listing compliance procedures for credit reporting agencies); *id.* § 1681g–1681h (addressing disclosure to the consumer); *id.* § 1681i (governing procedures to dispute ac-

curacy of credit report); *id.* § 1681m (addressing restrictions on users of credit reports); *id.* § 1681n (providing civil remedies, and statutory penalties, for willful noncompliance); *id.* § 1681o (providing civil remedies for negligent noncompliance); *id.* § 1681q (providing for criminal penalties for obtaining information under false pretense); *id.* § 1681s–2 (addressing the responsibilities of furnishers of information to provide accurate information to consumer reporting agencies).

credit report indicates "[t]he presence of individualized targeting [which] ... separates th[is] cases from others in which we have found the effects test unsatisfied." *Bancroft & Masters, Inc.,* 223 F.3d at 1088. As a result, we conclude that Bennett purposefully availed itself of Nevada by "intentionally direct[ing] his activities into [Nevada]." *Brainerd,* 873 F.2d at 1259.

b.

We turn next to the second prong of our personal jurisdiction analysis-causation. In determining whether Plaintiffs' claims arise out of Bennett's local conduct, the Ninth Circuit follows the "but for" test. *See Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir.1995). Hence, Plaintiffs must show that they would not have suffered an injury "but for" Bennett's forum related conduct. *See id.* Once again, Bennett's primary argument is that there can be no connection because Bennett itself did not place the inquiry into Plaintiffs' credit reports. As discussed above, however, Plaintiffs have presented a prima facie case that Barber acted as agent for Bennett. Thus, Barber's acts are relevant to this inquiry. Taking these acts into consideration, it is beyond doubt that Plaintiffs would not have suffered harm but for Bennett's inquiry into their credit reports. As such, we find that the claim arises out of Bennett's local conduct.

c.

Finally, we turn to the reasonableness inquiry. In determining whether the exercise of jurisdiction over a nonresident defendant is reasonable, precedent instructs us to consider seven factors: (1) the extent of Bennett's purposeful interjection into the forum state's affairs; (2) the burden on Bennett of defending in the forum; (3) the extent of conflict with the sovereignty of Bennett's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to Plaintiffs' interests in convenient and effective relief; and

(7) the existence of an alternative forum. *See Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1487–88 (9th Cir.1993). "None of the factors is dispositive in itself; instead, we must balance all seven." *Id.* at 1488. Furthermore, because Bennett purposefully directed its activities at Plaintiffs in Nevada, "[t]his placed the burden on [it] to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Panavision,* 141 F.3d at 1322 (quoting *Core–Vent,* 11 F.3d at 1487).

Bennett has not met its burden. Bennett's main argument posits that the Nevada district court had no interest in applying a consumer credit reporting law to a Nevada corporation, "the only (legal) person on which a report was ordered." As stated above, however, Plaintiffs have made a prima facie showing that Bennett ordered consumer reports on the two individual Plaintiffs, as well. Bennett also argues that a proper forum exists elsewhere and, for this reason, exercise of jurisdiction in Nevada is improper. The mere existence of an alternative forum, however, cannot possibly satisfy Bennett's burden to present a compelling case that jurisdiction is unreasonable. *See Panavision,* 141 F.3d at 1322. Bennett provides no other justification to support its claim that the exercise of jurisdiction would be unreasonable under the circumstances. Accordingly, we conclude that Bennett has failed to meet its burden and that exercise of personal jurisdiction in this case is therefore reasonable.

B.

On the venue issue, because subject matter jurisdiction is not founded solely on diversity of citizenship, the applicable statute is 28 U.S.C. § 1391(b). Under that statute, venue is proper in a judicial district if "a substantial part of the events or omissions giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(b)(2); *see also Lamont v. Haig,* 590 F.2d 1124, 1134–35 (D.C.Cir.1978) ("the

substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit"). With this policy in mind, at least one court has found that in a tort action, the locus of the injury was a relevant factor. *Cf. Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867–68 (2d Cir.1992). As noted above, at least one of the "harms" suffered by Plaintiffs is akin to the tort of invasion of privacy and was felt in Nevada. Accordingly, a substantial part of the events giving rise to the claim occurred in Nevada. Thus, venue was proper.

### IV.

For the foregoing reasons, we reverse the district court's orders dismissing these actions for lack of personal jurisdiction and improper venue and remand the cases for further proceedings.

**REVERSED and REMANDED.**