SHEDRAIN CORPORATION, Plaintiff,

v.

BONVI SALES CORP.;
et al., Defendants.

No. CIV 00–1586–JO.

United States District Court,
D. Oregon.

Feb. 12, 2001.

Steven M. Wilker, Tonkon Torp, Portland, OR, for Plaintiff.

Judy Danelle Snyder, Hoevet Snyder & Boise, Portland, OR, for Defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiff Shedrain Corporation brings this action against defendants Bonvi Sales Corp. ("Bonvi") and Robert Melzer, alleging claims for breach of contract, money had and received, unjust enrichment, piercing the corporate veil, and declaratory judgment.

Plaintiff originally filed the complaint in state court. On November 17, 2000, defendants removed the action to this court on the basis of diversity jurisdiction. The case is now before me on defendants' motion to dismiss (# 5) for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). For the reasons stated below, defendants' motion is denied.

## FACTUAL BACKGROUND

Except as otherwise noted, the parties generally agree on the following background facts.[1] Plaintiff is an Oregon corporation with its principal place of business in Portland, Oregon. Defendant Bonvi is a Florida corporation; defendant

---

1. The parties give differing dates for various events, but precision in dates is not necessary for resolution of the pending motion.

Robert Melzer is Bonvi's sole shareholder and president, and is a citizen of Florida.

Plaintiff manufactures and sells raingear, including umbrellas, throughout the United States. Plaintiff manufactures overseas, but its design, order processing, shipping and invoicing all are done through its headquarters in Northeast Portland. Plaintiff also maintains a showroom in New York City.

In 1991, Melzer, through Bonvi, began serving as an independent sales representative for plaintiff. At that time, Melzer also represented several other manufacturers, resided in Georgia, and conducted all of his business out of an office in Atlanta.

In 1994, Melzer moved to Florida and has since maintained business offices in Florida and Georgia. In November 1994, plaintiff approached Melzer in New York City and offered him the opportunity to serve as National Sales Manager, which he accepted. Beginning in late 1994 or early 1995, Melzer worked exclusively for plaintiff. As National Sales Manager, Melzer supervised plaintiff's sales force nationally, including sales representatives with accounts in Oregon. In addition to earning commissions, Melzer, through Bonvi, received overrides on sales by other sales representatives, including those in Oregon.[2]

In mid–1999, plaintiff proposed that Melzer become its National Accounts Manager, managing particular customers' accounts. In September 1999, Melzer entered into an agreement with plaintiff to become National Accounts Manager. According to plaintiff's president, Stanley Blauer, in his role as National Accounts Manager, Melzer (again through Bonvi) had direct responsibility for several important national accounts, including accounts in Oregon, and received commissions on all sales to those accounts, including sales to Oregon customers. Affidavit of Stanley Blauer, ¶ 2. Melzer states that none of the accounts for which he was responsible was headquartered in Oregon, although branch stores may have been located in Oregon. Affidavit of Robert Melzer (Reply), ¶ 8.

The parties' submissions reveal the following additional facts concerning Melzer's (Bonvi's) relationship with Oregon:

1. As sales representative, Melzer and Bonvi sent all orders to plaintiff's Portland office.

2. All of Melzer's and Bonvi's orders were processed, shipped, and invoiced from plaintiff's Portland office.

3. Melzer and Bonvi received commission advances and payments from plaintiff's Portland office.

4. Melzer communicated regularly with plaintiff's corporate office by telephone, facsimile, and computer.

5. Melzer traveled to Oregon eight or nine times to attend executive or strategy meetings with plaintiff. Each meeting lasted two to four days.

6. In September 1997, Melzer traveled to Oregon to introduce Carmen Papasedero, Andrew Stein's replacement (*see* footnote 2) to the Oregon/Washington sales territory.

7. In 1999, Melzer interviewed Carrie DelCurto in Portland and then agreed to her engagement as an additional Northwest sales representative.[3]

In late August 2000, plaintiff terminated its relationship with Melzer and Bonvi, due to a dispute over commissions. *See* Complaint, ¶¶ 6–8.

## DISCUSSION

■ The plaintiff bears the burden of establishing personal jurisdiction. *Farm-*

---

**2.** According to Melzer, he supervised only one Oregon sales representative, Andrew Stein, and received $6,000 per year in overrides on Stein's accounts. Affidavit of Robert Melzer (Reply), ¶ 5.

**3.** The court is unable to determine from the parties' submissions whether Melzer's 1997 and 1999 visits to Oregon are included in his estimated "eight or nine" visits.

ers *Ins. Ex. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir.1990). Where the court decides the jurisdictional issue based on affidavits and written discovery materials, plaintiff need make only a prima facie showing of jurisdictional facts to defeat a motion to dismiss. *Farmers Ins. Ex.*, 907 F.2d at 912; *see also* Judge William W. Schwarzer, Judge A. Wallace Tashima, & James M. Wagstaffe, Federal Civil Procedure Before Trial ¶¶ 9:116–118, at 9–30 (Rev. # 1 2000) ("[i]n this context, a 'prima facie' showing means that plaintiff has produced admissible evidence which, *if believed*, would be sufficient to establish the existence of personal jurisdiction" (citation omitted; emphasis in original)).

To establish personal jurisdiction, the plaintiff must show both that the forum state's long-arm statute confers personal jurisdiction over the nonresident defendant and that the exercise of jurisdiction comports with federal due process. *See, e.g., Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir.1990); *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1477 (9th Cir. 1986). The Oregon long-arm statute confers jurisdiction "to the extent permitted by due process." *Gray & Co.*, 913 F.2d at 760; *see* ORCP 4 L.

■ Due process requires that a defendant have a "minimum level of contacts with the forum before personal jurisdiction may be exercised." *Farmers Ins. Ex.*, 907 F.2d at 913 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). If a nonresident defendant's activities in the forum state are substantial or continuous and systematic, the court may assert general jurisdiction over a claim, even if the claim is unrelated to the defendant's forum activities. *Hirsch*, 800 F.2d at 1477. If the defendant's contacts are neither substantial nor continuous and systematic, the facts must be analyzed to determine if the defendant is subject to the court's limited jurisdiction. *Farmers Ins. Ex.*, 907 F.2d at 913; *Hirsch*, 800 F.2d at 1477.

■ The evidence in this case shows that defendants do not have sufficiently substantial ties to Oregon to warrant general jurisdiction. Thus, I must determine whether specific jurisdiction over these defendants exists in Oregon. To do so, I use a three-part test to evaluate the nature and quality of defendants' contacts:

1. The defendants must take some action whereby they purposefully availed themselves of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws;

2. The claim must arise out of or result from the defendants' forum-related activities; and

3. Exercise of jurisdiction must be reasonable.

*See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir.2001) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)); *see also Hirsch*, 800 F.2d at 1477; *Farmers Ins. Ex.*, 907 F.2d at 913.

■ The first prong, purposeful availment, "ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The focus in due process analysis is on a defendant's relationship to the forum and to the litigation, *Hirsch*, 800 F.2d at 1478, and thus turns on whether the defendant's contacts are attributable to the defendant's own actions and not to the unilateral actions of some other party. *Hirsch*, 800 F.2d at 1478. It does not require physical contacts and is fulfilled "if the defendant 'has taken deliberate action' toward the forum state." *Panavision*, 141 F.3d at 1320.

■ The second prong, "arising out of," requires that the plaintiff's claims arise out

of defendants' forum related activities. *See Panavision*, 141 F.3d at 1322. The Ninth Circuit follows a "but for" test in determining whether a claim arises out of a defendant's local conduct. *Myers*, 238 F.3d 1068, 1075 (*citing Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995)). Thus, plaintiff must show that it would not have suffered an injury "but for" defendants' forum-related conduct.

■ In determining whether the final element, reasonableness, is met, the court may consider seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on defendants to defend in Oregon; (3) the extent of conflict with the sovereignty of defendants' home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the conflict; (6) the importance of the forum to plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum. *Myers* at 1075. No one factor is dispositive. *Id.*

■ As defendants point out, the existence of a contractual relationship alone does not automatically establish the requisite contacts for the exercise of personal jurisdiction, *Burger King, supra*, 471 U.S. at 478, 105 S.Ct. 2174, nor does the use of a telephone or other means of communication necessarily qualify as " 'purposeful activity invoking the benefits and protection' " of the forum state. *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir.1991) (*quoting Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985)). But defendants' contacts with Oregon are more substantial than that, and I find that plaintiff has made the necessary prima facie showing.

■ Defendants agreed with plaintiff to serve on plaintiff's behalf in significant roles at the national level over an extensive period of time. In doing so, defendants not only secured certain contractual rights but also assumed ongoing obligations to plaintiff, a citizen of Oregon.

Nothing about defendants' involvement with plaintiff, and thus Oregon, reasonably can be described as "random," "fortuitous," or "attenuated" such that they could not have anticipated being haled into an Oregon court. *See Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Instead, the materials submitted demonstrate that Melzer's and Bonvi's own actions—not the unilateral actions of someone else—created a substantial connection with Oregon. *See Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174.

Moreover, plaintiff's claims involve a dispute over commissions advanced to and/or earned by Melzer and Bonvi, and arise directly out of the parties' business relationship. Thus, "but for" the defendants' business relationship with the Oregon plaintiff, this action would not have been filed. *See Myers*, 238 F.3d 1068, 1075.

Finally, defendants have failed to present a compelling case that other factors render jurisdiction in Oregon unreasonable, *i.e.*, that subjecting them to jurisdiction in Oregon would not comport with notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 (defendant who purposefully directs activities toward forum residents must present compelling case "that the presence of some other considerations would render jurisdiction unreasonable"). It may be more convenient for the defendants to defend this action in Florida, but they have demonstrated their willingness to travel to Oregon when it suits their needs, and I do not perceive that it would be, as defendants contend, a "very high" burden for Melzer (Bonvi) to travel here for trial.

Defendants rely on a factually similar Sixth Circuit decision, *Calphalon Corporation v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), for the proposition that their representation of plaintiff in states outside of Oregon is insufficient to establish the minimum contacts necessary to render this court's exercise of jurisdiction constitutional. *Calphalon* is, however, factually distin-

guishable[4] and is not, of course, controlling. In any event, I am inclined to agree with Judge Hillman's dissent, that the majority opinion "broaden[s] the notion of 'fortuitous' contacts so as to expand the concept beyond all recognition." *Calphalon*, 228 F.3d at 724 (Hillman, J., dissenting).

In sum, I find that plaintiff has made a prima facie showing of specific jurisdiction. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is denied.

## CONCLUSION

Defendants' motion to dismiss (# 5) is DENIED.

---

4. The defendant in *Calphalon* was an Ohio manufacturer's representative in the states of Minnesota, Iowa, North Dakota, South Dakota, and Nebraska. It does not appear that the defendant had supervisory authority over other representatives or acted on behalf of Calphalon in any national role. In contrast, Melzer and Bonvi assumed national supervisory roles in plaintiff, and even earned commissions on other employees' sales.