Gary BIRZER, an individual, Plaintiff,

v.

THE JOCKEY'S GUILD, INC., a Nevada corporation; L.W. Gertmenian, an individual; and Albert Fiss, an individual, Defendants,

JOCKEY'S GUILD, INC., a Nevada corporation, Third–Party Plaintiff,

v.

Mountaineer Park, Inc., a West Virginia corporation; and MTR Gaming Group, Inc., a Delaware corporation and Matrix Capital Associates, a California corporation, Third–Party Defendants.

No. CV05–8193SJO (SSX).

United States District Court, C.D. California.

June 29, 2006.

Don Fisher, Robert Hewit Garretson, III, Palmieri Tyler Wiener Wilhelm & Waldron, Irvine, CA, Paul S. Koczkur, Lupo and Koczkur, Detroit, MI, for Plaintiff.

Douglas W. Gastelum, Patrick Joseph Mcdonough, Terree A. Bowers, Howrey, Joshua F. Young, Robert A. Cantore, Gilbert And Sachman, Los Angeles, CA, Donald G. Ezzell, General Counsel Group, Jeffrey S. Yong, John James Aumer, Alexander & Yong, Los Angeles, CA, for Defendants and Third–Party Plaintiff.

**ORDER GRANTING THIRD–PARTY DEFENDANTS MOUNTAINEER PARK INC. AND MTR GAMING GROUP INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

OTERO, District Judge.

This matter is before the Court on Third–Party Defendants Mountaineer Park, Inc. and MTR Gaming Group, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Third–Party Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction.) Having considered the arguments raised in the briefs, the Court deemed the matter appropriate for decision without oral argument. See Fed.R.Civ.P. 78. Accordingly, the hearing was taken off-calendar. For the reasons stated below, Third–Party Defendants Mountaineer Park, Inc. and MTR Gaming Group, Inc.'s Motion is hereby GRANTED.

## I. FACTUAL BACKGROUND

The Third–Party Complaint against Mountaineer Park, Inc. ("Mountaineer") and MTR Gaming Group, Inc. ("MTR") arises out of injuries sustained by Plaintiff in the underlying complaint Gary Birzer ("Birzer"), a resident of the state of Ohio, during a July 20, 2004 horse race at Mountaineer Race Track in West Virginia. (Third–Party Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction at 2.)

On July 20, 2004, Birzer was riding a thoroughbred horse during the seventh race at Mountaineer Park; the horse broke its leg during the race and fell, causing Birzer to fall from the horse and suffer serious and permanent injury to his spinal cord, rendering him a quadriplegic. (Third–Party Defs.' Req. for Judicial Notice of Docs., Ex. A4.) On November 18, 2005, Birzer filed a complaint in this Court against The Jockey's Guild, Inc. ("the Guild"), L.W. Gertmenian, and Albert Fiss, alleging wrongdoing on behalf of the Guild in connection with the Guild's failure to secure supplemental on-track injury insurance for all jockey members.

In January 2006, the Guild, defendant in the underlying Complaint, filed a Third–Party Complaint against Third–Party Defendants, Mountaineer and MTR (collectively "Third–Party Defendants"), asserting claims for equitable indemnity and subrogation.[1] (Third–Party Defs.' Mot. to

---

1. The Guild also filed an Amended Third–Party Complaint against Matrix Capital Associates, a California corporation. That claim is not at issue here. Matrix Capital Associates

Dismiss for Lack of Personal Jurisdiction at 1.) Thereafter, Third–Party Defendants Mountaineer and MTR filed the instant Motion to Dismiss the Third–Party Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Third–Party Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction.)

Mountaineer is a West Virginia corporation with its principal place of business in West Virginia, engaged in the ownership and operation of a thoroughbred racetrack in West Virginia. (Third–Party Defs.' Req. for Judicial Notice of Docs., Ex. A2.) MTR, a Delaware corporation, is the parent company of Mountaineer with its principal place of business in West Virginia. *Id.* MTR alleges that it also does business in a number of other states outside of West Virginia, including Ohio, Pennsylvania, and Nevada, but has never done business in California, nor does it have a license to do so. (Decl. of Rose Mary Williams ¶ 4.) Third–Party Defendants allege that neither Mountaineer nor MTR make, solicit or engage in business in California, *id.* ¶ 5; neither have designated an agent for service of process in California, *id.* ¶ 6; neither own property, pay taxes, nor hold bank accounts within California, *id.* ¶ 7; and that the only connection that Mountaineer and MTR have with California is through XpressBet, Inc., an independent, nonexclusive representative based in Oregon, who is licensed to do business in a number of states, including California. *Id.* ¶ 8. XpressBet is a U.S.-based national account wagering business that permits customers to place wagers on horse races at over one hundred North American racetracks, and internationally on races at tracks in Australia, South Africa and Dubai. *Id.* ¶ 9. Customers can place wagers by telephone, over the internet, and at track-based terminals. *Id.* Third–Party Defendants allege that they have a simul-

cast wagering agreement with XpressBet that allows XpressBet to simulcast and accept wagers on horse races that take place at Mountaineer Race Track ("simulcast wagering agreement"). *Id.* ¶ 10.

Third–Party Defendants allege that MTR does not simulcast any races to California itself, and does not send its signal to California. MTR sends its signal to a satellite feed. XpressBet then picks up the satellite feed through the use of a decoder. *Id.* ¶ 11. Third–Party Defendants also allege that under the agreement, the decision as to whether a certain Mountaineer race will be simulcast or whether wagers will be accepted is made at the sole discretion of XpressBet. *Id.* ¶ 12. Third–Party Defendants claim that aside from the fact that California is one state in which individuals may place bets through XpressBet on races held at Mountaineer Race Track, Mountaineer and MTR had no contact whatsoever with the state of California in relation to the facts alleged in this lawsuit. *Id.* ¶ 13. Finally, Third–Party Defendants allege that XpressBet pays all licensing costs and associated taxes related to its business in California. *Id.* ¶ 14.

The Guild, however, alleges that Mountaineer and MTR's contacts with California also consist of importing satellite transmissions of California races to MTR facilities. The Guild further alleges that Third–Party Defendants import simulcasts of races from California tracks and broadcast them at Mountaineer Race Track and MTR's other facilities throughout the year. (Third–Party Pl.'s Opp'n to Third–Party Defs.' Mot. to Dismiss at 3.)

## II. *DISCUSSION*

### A. *Introduction*

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(2), a court may dismiss a

filed an Answer to the Amended Third–Party Complaint on April 28, 2006.

suit for lack of personal jurisdiction. Fed. R.Civ.P. 12(b)(2). A court cannot assert personal jurisdiction over a defendant absent statutory authorization. *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104–105, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Statutory authorization is typically found in the forum state's "long-arm" statute. If such statute does not enable plaintiff to obtain personal jurisdiction over a defendant in a state court action, plaintiff generally will be unable to obtain personal jurisdiction in a federal court action in that state.

In California, the applicable jurisdictional statute permits local courts to exercise jurisdiction "on any basis not inconsistent with the Constitution of this State or of the United States." Cal.Civ.Proc.Code § 410.10. Accordingly, the court need only determine whether the assertion of personal jurisdiction over the defendant violates the Due Process Clause of the United States Constitution. *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 398 (9th Cir.1981).

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Constitution permits the exercise of jurisdiction only where a nonresident has sufficient minimum contacts with the forum state, such that the exercise of jurisdiction is reasonable and maintenance of the suit does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court possesses personal jurisdiction. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir.2002).

There are two recognized bases for personal jurisdiction over nonresident defendants: (1) "general jurisdiction" which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) "specific jurisdiction" which arises out of the defendant's contacts with the forum state giving rise to the subject litigation. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ In the Opposition to Mountaineer and MTR's Motion to Dismiss, the Guild contends that Mountaineer and MTR's contacts with California are so pervasive as to justify the exercise of general jurisdiction. (Third–Party Pl.'s Opp'n to Third–Party Defs.' Mot. to Dismiss at 6–11.) However, the Guild does not argue that there is a basis for specific jurisdiction. In the Opposition, the Guild does not contest the lack of specific personal jurisdiction and does not argue that any of Third–Party Defendants' limited contacts or forum-related activities are related to the underlying cause of action. To determine whether there is specific jurisdiction, the Ninth Circuit employs a "but for" test as to whether the defendant's contacts gave rise to the cause of action. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). In order to satisfy the requirement, the plaintiff must show that "but for" the defendant's forum-related conduct, the cause of action would not have occurred. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir.2001). In this case, it is uncontested that Third–Party Defendants' limited contacts with California are not a "but for" cause of Birzer's claims, for which the Guild now seeks indemnity. The Guild fails to allege that "but for" Third–Party Defendants' simulcast wagering agreement with XpressBet

or its importing of California simulcasts, that Birzer would not have suffered his accident and the Guild would not have been sued. In fact, the Guild's Third–Party Complaint alleges that Birzer's injuries were caused by "Mountaineer's substandard maintenance of the track" that is located in West Virginia. (Third–Party Compl. ¶ 11.) Accordingly, this Court need only determine whether the Guild has sufficiently established that the Court may exercise general jurisdiction over Mountaineer and MTR.

### B. General Jurisdiction Is Absent in this Case.

■ The Guild has not met its burden of establishing that the Court has general jurisdiction over Mountaineer and MTR. When a district court exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state is said to be exercising general jurisdiction over the defendant. *Helicopteros*, 466 U.S. at 414, n. 9, 104 S.Ct. 1868. To establish general jurisdiction, the defendant must have "substantial" or "continuous and systematic activities" within the forum state. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000). "The standard for establishing general jurisdiction is 'fairly high,' [citations omitted] and requires that the defendant's contacts be of the sort that approximate physical presence within the state." *Bancroft*, 223 F.3d at 1086. The cases dealing with general jurisdiction emphasize that no general jurisdiction exists if the nonresident defendants have no regular place of business in the forum state, are not licensed to do business in the forum state, and do not have systematic and continuous contacts with the forum state. *Helicopteros*, 466 U.S. at 415, 104

S.Ct. 1868; *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330–31 (9th Cir.1984); *Congoleum Corporation v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir.1984). When determining if systematic and continuous contacts exist to support the exercise of general jurisdiction, courts look to "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft*, 223 F.3d at 1086.

■ Though Mountaineer and MTR have no offices, employees, or sales agents in California, have not designated an agent for service of process in California, do not hold a California business license, nor are they incorporated in California, the Guild argues that Third–Party Defendants have ample contacts with the state of California to support general personal jurisdiction. The Guild argues that: Third–Party Defendants' contacts with California through XpressBet simulcasts that "sell" Mountaineer and MTR's racing product to California bettors through XpressBet are sufficient to support general jurisdiction (Third–Party Pl.'s Opp'n to Third–Party Defs.' Mot. to Dismiss at 6); MTR's "importation" of satellite transmissions of races taking place at California tracks are further contacts that support the exercise of general jurisdiction, *id.* at 9; and that MTR's cumulative contacts of "sales" generated through simulcasts and advertising of its Las Vegas operations in California publications, targeting California residents, support general jurisdiction. *Id.* at 10. However, as explained below, none of these claims alone or taken together is sufficient to establish the kind of systematic and continuous contacts that support the exercise of general jurisdiction.

1. *"Sales" Through XpressBet, a Non–Exclusive, Independent Representative, and "Importation" of Satellite Transmissions Are Insufficient to Support General Jurisdiction.*

The Guild alleges that MTR solicits and makes "sales" in California by taking wagers made in California on races run at Mountaineer Park, and that MTR sells its simulcasting service in California by taking wagers on races run in California, which are simulcast at Mountaineer Park and other MTR facilities. (Third–Party Pl.'s Opp'n to Third–Party Defs.' Mot. to Dismiss at 9.) However, even taking these allegations as true, they are insufficient to support the exercise of general jurisdiction. California case law makes clear that (1) the mere existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident, and (2) sales and marketing efforts within the forum state through an independent nonexclusive sales representative doing business in the forum state are insufficient to establish general jurisdiction over a nonresident defendant. *See Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868 (finding no general jurisdiction in Texas over helicopter transportation company that purchased eighty percent of its helicopters, spare parts, and accessories from Texas sources over a four year period); *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir.1991); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242 (9th Cir.1984); *Fisher Governor Co. v. Superior Court,* 53 Cal.2d 222, 225, 1 Cal.Rptr. 1, 347 P.2d 1 (1959).

The Ninth Circuit recognizes that merely contracting with a California resident or one licensed to do business in California is not sufficient to support the exercise of general jurisdiction. The court in *Bancroft & Masters, Inc. v. Augusta National, Inc.* held that "engaging in commerce with those who do business in the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." 223 F.3d at 1086. In *Bancroft,* the Ninth Circuit held that no general jurisdiction existed over the defendant because its contacts with California, which consisted of license agreements with two television networks and several California vendors, constituted doing business *with* California and not *in* California. *Id.* Mountaineer and MTR's alleged contacts with California, doing business through XpressBet, a company licensed to do business in California, resemble those of the defendant in *Bancroft* and are insufficient to support general jurisdiction.

The Ninth Circuit has also recognized that sales and marketing efforts in a forum state through an independent and nonexclusive representative are insufficient to support general jurisdiction. *Congoleum,* 729 F.2d 1240; *Fisher,* 53 Cal.2d 222, 1 Cal.Rptr. 1, 347 P.2d 1. In *Congoleum Corporation v. DLW Aktiengesellschaft,* the defendant moving for dismissal for lack of personal jurisdiction had numerous activities in California through an independent representative. The independent sales representative solicited orders for the defendant in California, ordered samples for the defendant, and promoted the defendant's products through mail and showroom displays in California. 729 F.2d at 1242. The Ninth Circuit held that these activities were insufficient to "make it reasonable and just to subject the corporation to the jurisdiction" of California. *Id.* at 1243. In *Fisher Governor Co. v. Superior Court,* the defendant also sold its products in California through a nonexclusive independent sales agent. The independent representative received commissions on the sales and distributed the defendant's catalogs in California. The court in *Fisher* held that "more contacts are required for assumption of such extensive jurisdiction than sales and sales promotion within the

state by independent nonexclusive sales representatives." 53 Cal.2d at 225, 1 Cal. Rptr. 1, 347 P.2d 1.

In the Opposition, the Guild attempts to distinguish both *Congoleum* and *Fisher* from this case. The Guild argues that the "sales" generated through XpressBet are systematic and continuous, while in *Congoleum* and *Fisher* there were no allegations that the foreign defendants made sales virtually every week of every year in the forum states. (Third–Party Pl.'s Opp'n to Third–Party Defs.' Mot. to Dismiss at 10.) However, Mountaineer and MTR's contacts with California are analogous to those at issue in *Congoleum* and *Fisher*. Like the defendants in both *Congoleum* and *Fisher*, Mountaineer and MTR's contacts are insufficient to support general jurisdiction because Mountaineer and MTR's "sales" with California residents are generated through XpressBet, an independent and nonexclusive representative. According to Third–Party Defendants, under the simulcast wagering agreement, XpressBet performs services for Mountaineer and MTR on a nonexclusive basis, such that Mountaineer and MTR have the right to contract with others to perform those services for them, and XpressBet has the right to and does render like services to clients other than Mountaineer and MTR. (Mem. of P. & A. in Supp. of Third–Party Defs.' Reply to Opp'n at 4.)

The Guild further alleges that even if simulcasts of races run at Mountaineer and other MTR facilities are available to California bettors only through XpressBet, Third–Party Defendants also import simulcasts of California races and broadcast them at Mountaineer and other MTR facilities throughout the year. (Third–Party Pl.'s Opp'n to Third–Party Defs.' Mot. to Dismiss at 3.) The Guild alleges that this "importing" constitutes continuous and systematic contacts with California. (Third–Party Pl.'s Opp'n to Third–Party

Defs.' Mot. to Dismiss 3.) However, the receipt of satellite transmissions and the subsequent broadcasting of California horse races that take place in West Virginia do not "approximate a physical presence" in California on the part of Third–Party Defendants to support the exercise of personal jurisdiction. (Mem. of P. & A. in Supp. of Third–Party Defs.' Reply to Opp'n at 5.)

2. *Mountaineer and MTR's Cumulative Contacts with California Are Insufficient to Establish General Jurisdiction.*

The Guild alleges that MTR also operates casinos in Las Vegas, Nevada that advertise in California publications, targeting California residents for their business purposes. (Third–Party Pl.'s Opp'n to Third–Party Defs.' Mot. to Dismiss at 5.) The Guild contends that MTR's cumulative contacts including generating "sales" through simulcast wagering and targeting California residents through MTR's national presence in the gaming industry establish sufficient contacts with California for the court to exercise personal jurisdiction over MTR. (Third–Party Pl.'s Opp'n to Third–Party Defs.' Mot. to Dismiss at 10.) However, even taking these allegations as true, the Guild has failed to establish that Mountaineer and MTR have contacts that "approximate a physical presence" in California. *See Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868 (finding that defendant's cumulative contacts in the forum state could not be regarded as continuous and systematic to support general jurisdiction). At most, Third–Party Defendants' contacts constitute doing business with those licensed to do business in California, and this is not sufficient to support the exercise of general jurisdiction. *See Bancroft*, 223 F.3d at 1086.

### III. CONCLUSION

For the foregoing reasons, the Court finds that it cannot exercise *in personam* jurisdiction over Third–Party Defendants Mountaineer and MTR. The Motion to Dismiss for Lack of Personal Jurisdiction is hereby GRANTED. Third–Party Defendants Mountaineer and MTR are dismissed in this action.

IT IS SO ORDERED.