### Leslie GORDON, Plaintiff,

v.

### DTE ENERGY, Experian Information Solutions, Inc., and Equifax Information Services, LLC, Defendants.

### Case No. C09–1020–JCC.

United States District Court,
W.D. Washington,
at Seattle.

Jan. 26, 2010.

**1284**

Christopher E. Green, Christopher E. Green, Attorney at Law, Bellevue, WA, for Plaintiff.

John Ray Nelson, Foster Pepper LLC, Gloria S. Hong, Stoel Rives, Seattle, WA, Jason C. Wright, Jones Day, Los Angeles, CA, Stephanie D. Cope, King & Spalding, Atlanta, GA, Kevin H. Breck, Winston & Cashatt, Spokane, WA, for Defendants.

### ORDER

JOHN C. COUGHENOUR, District Judge.

This matter comes before the Court on Defendant DTE Energy's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue (Dkt. No. 16), Plaintiff's Response (Dkt. No. 27), and Defendant's Reply (Dkt. No. 32). The Court also considers Plaintiff's unopposed motion for extension of time to file an expert affidavit. (Dkt. No. 30.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Defendant's motion and GRANTS Plaintiff's motion for the reasons explained herein.

### I. BACKGROUND

Plaintiff has suffered the consequences of identity theft since 2000. (Resp. 2–3 (Dkt. No. 27).) After years of harassment and poor credit scores, Plaintiff hoped that the problems were behind her and applied for a mortgage with her husband in April, 2009. (Id. at 3.) A representative of the mortgage company she selected, Washington-based Compass Mortgage, procured her credit report from the three credit reporting bureaus—Equifax, Experian, and Trans Union. (Id.) These reports showed two fraud-related accounts including an account with Defendant DTE, a Michigan-based utility company, which showed that Plaintiff had a sixty- to ninety-day delinquent utility account with a balance of $368 in April, 2009. (Id.) Plaintiff alleges that this delinquent account caused her credit score to fall below the level she needed to qualify for a thirty-year 5.5% fixed rate mortgage. (Id.)

Plaintiff alleges that she attempted to correct her credit report through several different channels, but had no success. (Id.) Even after Plaintiff had filed fraud reports with the credit bureaus to attempt to convince DTE to remove the delinquent bill from her report, Plaintiff claims that DTE reverified the seriously delinquent status of the account and updated the balance due to $585. (Id. at 4.) Plaintiff now brings claims against DTE for violation of the Fair Credit Reporting Act ("FCRA") and several state-law claims. DTE argues that this Court lacks personal jurisdiction over it.

### II. DISCUSSION

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir.2004) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction is divided into two categories—general and specific—but because Plaintiff does not claim general jurisdiction, the Court will only ask whether it has specific personal jurisdiction over DTE. The Ninth

Circuit has established a three-part test to determine specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802 (citing *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987)).

### A. Purposeful Direction

■ To analyze the "purposeful direction" requirement of the first part of the test, the Ninth Circuit has adopted yet another three-part "effects" test. The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803 (citing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). The Court will examine each of these three factors in turn.

### 1. Intentional Act

■ Under the *Calder* test, the word "act" is used "to denote an external manifestation of the actor's will" and "intent" refers "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Id.* at 806. Plaintiff argues, relying on expert opinion, that Defendant's reporting of the delinquent account to the credit bureaus was an intentional act, even if the process was largely automated. (Resp. 7–8 (Dkt. No. 27).) Defendant counters that expert speculation about the likelihood of human involvement in an automated process is not evidence of an intentional act for the purposes of this motion. (Reply 2–3 (Dkt. No. 32).) The Court agrees that Plaintiff's expert, lacking any specific familiarity with DTE, appears to have little basis for drawing conclusions about DTE's inner workings and processes. Such expert opinion, however, is unnecessary.

The Court sees no basis to question whether the output of an automated reporting system is an intentional act. The output of such a system is an act because it is a manifestation of its operator's will. It is intentional because it was designed to report on delinquent accounts, and it did so. No further inquiry into the nature of intent is required.

### 2. Express Aiming

■ The express-aiming requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters v. Augusta Nat'l,* 223 F.3d 1082, 1087 (9th Cir.2000). Knowledge of the plaintiff's residence is the crucial element. *See Cisneros v. Trans Union, L.L.C.,* 293 F.Supp.2d 1156, 1166 (D.Haw.2003) (no personal jurisdiction in Hawaii where defendant had "ceased contact with [p]laintiff long before he took up residence in Hawaii"); *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1073–74 (9th Cir.2001) (personal jurisdiction where defendants were fully aware that the plaintiff was a resident of the forum); *see also Screen v. Equifax Info. Sys., LLC,* 303 F.Supp.2d 685, 690 (D.Md.2004) (no personal jurisdiction where plaintiff had failed to provide evidence of defendant's knowledge of plaintiff's residence).

Plaintiff has demonstrated that Defendant was aware of its Washington residence. Plaintiff claims, and her expert

avers, that Equifax and Experian sent a consumer verification form to Defendant that included her address in the state of Washington. (Resp. 3–4 (Dkt. No. 27).) (Szwak Aff. 13 (Dkt. No. 30 at 18).) In June 2009, Defendant sent Plaintiff a fraud affidavit at her Washington address. (Resp. 4 (Dkt. No. 27).) This correspondence satisfies Plaintiff's burden under a motion to dismiss to establish that Defendant knew Plaintiff was a resident of Washington.

### 3. Effects of Conduct

■ To satisfy the final part of the "effects" test, a plaintiff must show that the defendant knew the harm would be suffered in the forum state. *Schwarzenegger,* 374 F.3d at 802. The Ninth Circuit has held that harm due to violations of the FCRA occurs where the plaintiff feels the consequences, not where the event complained of occurred. *Myers,* 238 F.3d at 1074. There is no dispute that Plaintiff felt the consequences in Washington. Accordingly, Plaintiff has established that it was reasonably foreseeable that the effects of Defendant's actions would be felt in Washington.

### B. Causation

■ The next prong of personal jurisdiction analysis is causation. *Id.* at 1075. To determine whether a plaintiffs claims arise from the defendant's activities, the Ninth Circuit follows the "but for" test. *See Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir.1995). Hence, Plaintiff must show that she would not have suffered an injury "but for" Defendant's forum-related conduct. *See Myers,* 238 F.3d at 1075. Defendant argues that Plaintiff could have felt the effects wherever she resided, not just Washington. (Mot. 12 (Dkt. No. 16).) Defendant's arguments miss the point. Plaintiff must show that but for the Defendant's actions, the effects would not have *arisen;* Plaintiff is not required to show

that the effects would not have arisen *in Washington.* A relationship to Washington was established under the "effects" test and need not be reestablished here. Plaintiff has made a *prima facie* case that her damages would not have arisen but for Defendant's alleged reporting failures. (Resp. 15–16 (Dkt. No. 27).)

### C. Reasonableness

The third prong of personal jurisdiction analysis is reasonableness. *See Myers,* 238 F.3d at 1075. The Ninth Circuit has held that seven factors must be considered in determining whether the exercise of jurisdiction over a nonresident defendant is reasonable: (1) the extent of defendant's purposeful interjection into the forum state's affairs; (2) the burden on defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum. *See Id.; Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1487–88 (9th Cir.1993). Furthermore, because Defendant purposefully directed its activities at Plaintiff in Washington, Defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Myers,* 238 F.3d at 1075 (quoting *Core–Vent,* 11 F.3d at 1487).

Defendant has failed to present a compelling case that jurisdiction in Washington is unreasonable. Defendant raises two main arguments. With respect to purposeful injection, Defendant argues that it could not have reasonably expected that the reporting of a bill would cause harm in Washington. (Mot. 13 (Dkt. No. 16).) The Court has already found that when

Defendant received a dispute form with a Washington address and mailed an affidavit to Washington, it should reasonably have expected that the effects of any wrongful conduct would be felt in Washington. With respect to convenience and efficiency, Defendant argues that transportation of witnesses, evidence, and hardware to Washington would be burdensome and inefficient. (Mot. 17–18 (Dkt. No. 16).) Defendant provides no details, however, to justify this assertion. The Court believes that Washington's interest in providing its citizens with redress for injuries occurring within the state outweighs Defendant's protestations of inconvenience.

### D. Venue

Defendant argues that the Eastern District of Michigan would have been a more appropriate venue for this case. (Mot. 16 (Dkt. No. 16).) Because subject-matter jurisdiction is not founded solely on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(b). Under that statute, venue is proper in a judicial district if "a substantial part of the events or omissions giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(b)(2). The Ninth Circuit has found that the locus of the injury from an FCRA violation was a relevant factor. *Myers*, 238 F.3d at 1075–1076. The Court has already found that Plaintiff suffered harm in Washington. Therefore, a substantial part of the events giving rise to the claim occurred in Washington. The Western District of Washington is a proper venue for this case.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue (Dkt. No. 16) is DENIED.

Plaintiff's unopposed Motion for Extension of Time is GRANTED. (Dkt. No. 30.)