# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID MENKEN,

        *Plaintiff-Appellant,*

        v.

GERRY F. EMM and MAXINE C.
EMM; COLDWELL BANKER ITILDO,
INC.; MARSHA L. TOMERLIN and
JOHN DOE TOMERLIN; DAVID J.
MORANDI and JANE DOE MORANDI;
SCARPELLO, HUSS & OSHINSKI, LTD.,

        *Defendants-Appellees.*

No. 05-16467

D.C. No.
CV-04-0598-PHX-
MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
June 12, 2007—San Francisco, California

Filed September 19, 2007

Before: Jay S. Bybee and Milan D. Smith, Jr.,
Circuit Judges, and J. Michael Seabright,* District Judge.

Opinion by Judge Seabright;
Partial Concurrence and Partial Dissent by Judge Bybee

---

*The Honorable J. Michael Seabright, United States District Judge for
the District of Hawaii, sitting by designation.

## COUNSEL

John Derrick, Law Office of John Derrick, Santa Barbara, California, for the plaintiff-appellant.

Vincent M. Creta, Hammerman & Hultgren, Phoenix, Arizona, for the defendants-appellees.

## OPINION

SEABRIGHT, District Judge:

On December 12, 2003, Plaintiff-Appellant David Menken ("Menken") filed a Complaint in Arizona state court alleging negligence, interference with contractual relations, civil extortion, and a violation of Arizona Revised Statutes ("A.R.S.") § 33-420. Defendant-Appellee Tomerlin removed the case (based on diversity of citizenship) to the United States District Court for the District of Arizona on March 24, 2004.[1] The district court dismissed for lack of personal jurisdiction.

---

[1]The Complaint names several defendants; on appeal, Menken is pursuing his case against only Marsha Tomerlin, her husband John Doe Tomerlin, and Coldwell Banker Itildo, Inc. (collectively, "Tomerlin"). Marsha Tomerlin, a Nevada resident, is President of Coldwell Banker Itildo, Inc., a Nevada corporation with its lone office in Minden, Nevada.

Because we conclude that Tomerlin had sufficient contacts with the State of Arizona to warrant the exercise of personal jurisdiction, we reverse the judgment of the district court.

I.

In his Complaint, Menken alleges that Tomerlin obtained a judgment against Menken in a case arising out of the United States District Court for the District of Nevada (CV-N-96-00142). In 1998, Tomerlin (along with other judgment creditors) obtained a judgment against Menken for attorneys' fees and costs totaling $29,883.63. Menken never satisfied the judgment. Between 1998 and 2003, Tomerlin incurred expenses and legal fees attempting to locate Menken and his assets. On May 1, 2003, the judgment creditors recorded the Nevada judgment against Menken in Maricopa County, Arizona and established a lien on Menken's home there.

Menken alleges that Tomerlin then attempted to use the lien as leverage to extract more money from Menken than was due under the Nevada judgment. On August 22, 2003, Tomerlin's Nevada attorney wrote to Menken's agent in Arizona with a payoff demand for the judgment ($29,883.63) and post-judgment interest ($13,361.05), as well as costs and legal fees accrued attempting to locate Menken ($36,740.52), for a total demand of $79,985.20. Menken's attorney responded to the payoff demand by letter dated September 2, 2003, claiming the amount was too high and that Menken did not have to pay the post-judgment costs and legal fees. Tomerlin then rejected Menken's proposal to pay the judgment and interest, but not the post-judgment costs and legal fees, in a September 15, 2003 letter. Menken's counsel wrote to Tomerlin's attorney on October 23, 2003 advising that Menken had a pending offer from a buyer to purchase his home in Maricopa County, but could not complete the sale while Tomerlin's lien was in place. Menken's counsel wrote again on November 11, 2003, requesting that Tomerlin release the judgment lien. The lien

was not released and, according to Menken, the sale of his home fell through.

Menken filed a Complaint on December 12, 2003 in Arizona state court, later removed to the United States District Court for the District of Arizona, alleging negligence, interference with contractual relations, civil extortion, and a violation of A.R.S. § 33-420.[2] On January 27, 2005, the district court granted Tomerlin's motion to dismiss for lack of personal jurisdiction.

Following the issuance of the January 27, 2005 Order, no separate entry of judgment was filed. Instead, on February 11, 2005, Menken filed a "Motion to Retain In Rem Jurisdiction Over Count Four Relating to A. R. S. § 33-420." At the June 24, 2005 hearing on the motion, Menken orally moved to amend the Complaint. On June 29, 2005, the district court entered an order denying Menken's motion to retain in rem jurisdiction and denying his motion to amend the Complaint. A separate document entering final judgment was filed on

---

[2]A.R.S. § 33-420 states in part:

**A.** A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

**B.** The owner or beneficial title holder of the real property may bring an action pursuant to this section in the superior court in the county in which the real property is located for such relief as is required to immediately clear title to the real property as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid[.]

June 29, 2005. Menken filed his notice of appeal on July 22, 2005.

On appeal, Menken argues that the district court erred in finding that it did not have personal jurisdiction over Tomerlin; denying his motion to retain in rem jurisdiction; and denying his motion to amend the Complaint. Tomerlin challenges the timeliness of Menken's notice of appeal.

## II.

**[1]** We first address Tomerlin's argument that Menken's appeal is untimely. A notice of appeal "must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A). A judgment or order is entered as follows:

> (i) if Federal Rule of Civil Procedure 58(a)(1) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a); or
>
> (ii) if Federal Rule of Civil Procedure 58(a)(1) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:
>
>> • the judgment or order is set forth on a separate document, or
>>
>> • 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79(a).

Fed. R. App. P. 4(a)(7). Federal Rule of Civil Procedure 58(a)(1) requires the January 27, 2005 Order to be set forth in a separate document. *See* Fed. R. Civ. P. 58(a)(1) ("Every

judgment and amended judgment must be set forth on a separate document," except for orders disposing of motions which are not applicable here). Therefore, the 30-day appeals window to file a notice of appeal began to run when the judgment or order was entered in the civil docket under Federal Rule of Civil Procedure 79(a)[3] and when the earlier of these two events occurred: (1) the judgment or order was set forth on a separate document, or (2) 150 days had run from entry of the judgment or order in the civil docket.

**[2]** No separate document was entered following the January 27, 2005 Order. The parties agree that at the time the judgment was entered, more than 150 days had run from entry of the January 27, 2005 Order; that is, 153 days ran from the date of the January 27, 2005 Order and the June 29, 2005 entry of judgment.

**[3]** The parties dispute the window of time for filing a notice of appeal with respect to a judgment entered by operation of Federal Rule of Appellate Procedure 4(a)(7), when more than 150 days have run from entry of the judgment or order in the civil docket. Tomerlin argues that if more than 150 days have passed from the entry of the order, the time to appeal that order has expired. Menken correctly asserts that under Federal Rule of Appellate Procedure 4(a)(7)'s plain language, judgment was entered after 150 days, which then

---

[3]Federal Rule of Civil Procedure 79(a) states in pertinent part:

All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made. When in an action trial by jury has been properly demanded or ordered the clerk shall enter the word "jury" on the folio assigned to that action.

started the Federal Rule of Appellate Procedure 4(a)(1)(A) 30-day appeals period. In other words, Menken had 180 days (150 days plus 30 days) from entry of the order on January 27, 2005 in which to appeal.

**[4]** Menken filed his notice of appeal on July 22, 2005, which is 176 days from the entry of the January 27, 2005 Order. Menken's notice of appeal is therefore timely.

### III.

### A.    Standard of Review

We review the district court's decision to dismiss for lack of personal jurisdiction *de novo*. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). However, this showing requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citations omitted). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977)), uncontroverted allegations in the complaint must be taken as true. *Id.* (citing *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996)). The court resolves all disputed facts in favor of the plaintiff. *Pebble Beach Co.*, 453 F.3d at 1154.

### B.    Legal Framework for Personal Jurisdiction Analysis

We first outline the legal framework for our personal jurisdiction analysis.

When no federal statute specifically defines the extent of personal jurisdiction, we look to the law of the state where the district court sits — in this case, Arizona. Arizona's long-arm rule permits the exercise of personal jurisdiction to the extent allowed by the due process clause of the United States Constitution.

*CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1110 (9th Cir. 2004) (internal citations and quotation signals omitted).

[5] A court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be "present" in that forum for all purposes, a forum may exercise only "specific" jurisdiction — that is, jurisdiction based on the relationship between the defendant's forum contacts and plaintiff's claims. The parties agree that general jurisdiction does not exist here; only specific jurisdiction is at issue.

We analyze specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (internal citation omitted). On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

**[6]** We next elaborate on the three prongs of our personal jurisdiction analysis: (1) purposeful availment and direction; (2) forum-related conduct; and (3) reasonableness.

### 1.  *Purposeful Availment and Direction*

**[7]** The proper application of the first prong is contested in this case. This prong "includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). *Yahoo! Inc.* outlined the contours of purposeful availment and direction in tort and contract cases:

> We have typically treated "purposeful availment" somewhat differently in tort and contract cases. In tort cases, we typically inquire whether a defendant

"purposefully directs his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. *See Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones,* 465 U.S. 783, 789-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). By contrast, in contract cases, we typically inquire whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummates a transaction" in the forum, focusing on activities such as delivering goods or executing a contract. *See Schwarzenegger*, 374 F.3d at 802.

*Id.* (brackets omitted).

Menken argues that the district court erred by failing to employ the "effects test" for tort claims as set forth in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, a California-based entertainer sued for an allegedly defamatory article published by defendants. The article had been written and edited in Florida, and the defendants had few contacts with California. The Court upheld the exercise of personal jurisdiction in California because the defendants knew that the article would have an effect there. *Calder* held that the defendants had not engaged in "mere untargeted negligence"; rather, their "intentional, and allegedly tortious, actions were expressly aimed at California." *Calder*, 465 U.S. at 789 (brackets omitted).

**[8]** We construe *Calder*'s effects test to impose three requirements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206.

In a specific jurisdiction inquiry, we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts. "A

strong showing on one axis will permit a lesser showing on the other. A single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Id.* at 1210 (internal citation, quotation signals, ellipses, and brackets omitted).

### 2.    *Forum-Related Conduct*

Under the second prong of our personal jurisdiction analysis, the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities. In determining whether Menken's claims arise out of Tomerlin's forum-related conduct, "the Ninth Circuit follows the 'but for' test." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). Hence, Menken must show that he would not have suffered an injury "but for" Tomerlin's forum-related conduct.

### 3.    *Reasonableness*

The third prong examines whether the exercise of the jurisdiction would be reasonable.

> We consider the following seven factors when making this determination: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CE Distrib.*, 380 F.3d at 1112 (internal citation omitted).

With this framework in mind, we turn to Menken's claims against Tomerlin.[4]

## IV.

### A. Purposeful Availment and Direction: The "Effects Test"

[9] The district court recited our three-prong test for personal jurisdiction, but did not clearly indicate that it was employing the "effects test" as to the first prong. Because Menken's Complaint alleges negligence, wrongful interference with contractual relations, civil extortion, and a violation of A.R.S. § 33-420, his cause of action arises primarily in tort; therefore, *Calder*'s "effect's test" is the proper framework for the first prong's purposeful availment and direction analysis. Under this analysis, Menken has alleged sufficient facts to satisfy the three requirements of the "effects test." The court addresses each of the test's three elements in turn.

---

[4]Tomerlin claims that Menken waived the application of the personal jurisdiction "effects test" on appeal because he did not raise it before the district court. We disagree and conclude that Menken sufficiently raised the issue below for the district court to rule on it. *See Arizona v. Components Inc.*, 66 F.3d 213, 217 (9th Cir. 1995) ("Although there is no bright-line rule to determine whether a matter has been raised below, a workable standard is that the argument must be raised sufficiently for the trial court to rule on it.") (citation, quotation signals, and ellipses omitted). For example, Menken urged the district court to apply the Ninth Circuit's personal jurisdiction analysis set forth in *Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001). *See* Pl's. Resp. to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction at 3. *Myers* sets forth the "effects test" for personal jurisdiction analysis. *See* 238 F.3d at 1072 ("The Supreme Court has established that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's 'intentional conduct in the foreign state was calculated to cause injury to the plaintiff in the forum state.' *Calder v. Jones*, 465 U.S. 783, 791, 104 S. Ct. 1482, 79 L. Ed.2d 804 (1984).") (brackets omitted). Because Menken sufficiently raised the issue below for the district court to rule on it, he has not waived his argument that the "effects test" is the applicable framework for our personal jurisdiction analysis.

### 1. *Intentional Act*

**[10]** Menken alleges that Tomerlin "committed an intentional act" by intentionally interfering with his contractual relation with a third party for the pending sale of his property; that Tomerlin demanded a sum of money in excess of the lawful amount due under the judgment; and that Tomerlin intentionally violated A.R.S. § 33-420 by recording an invalid lien.

### 2. *Expressly Aimed at Arizona*

**[11]** Second, Menken alleges that Tomerlin's intentional conduct was expressly aimed at the forum state because the act of "trying to extract the judgment payoff" was aimed at tying up Menken's real property located in Arizona. The requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal citation and quotation signals omitted). Menken sufficiently alleges that Tomerlin engaged in wrongful conduct targeted at Menken, whom Tomerlin knew to be a resident of Arizona.

### 3. *Causing Harm Tomerlin Knew Would be Suffered in Arizona*

**[12]** Finally, Menken alleged that the action caused harm that Tomerlin knew was likely to be suffered in Arizona. The Complaint alleges that Menken told Tomerlin that title to his Arizona property was clouded by the allegedly invalid judgment lien and that he could not sell the property with the lien in place. When Tomerlin improperly recorded the lien in Arizona and then refused to accept the legally owed amount as full satisfaction of the lien, Tomerlin caused harm knowing that it would be suffered in Arizona.

**[13]** Menken has sufficiently alleged the three requirements of the "effects test" and has met his burden as to the first prong.

## B. Forum-Related Conduct

**[14]** The second prong of the analysis is easily met. Menken alleges that he would not have suffered an injury "but for" Tomerlin's forum-related conduct. Assuming Menken's allegations as true, Menken was unable to close on the sale of his Arizona property because Tomerlin recorded the lien on the property, demanded a sum in excess of that lawfully due under the Nevada judgment, and refused to remove the lien. Menken's tort claims arise out of Tomerlin's demand for an amount greater than awarded by the Nevada judgment in Arizona.

**[15]** Although Tomerlin's alleged contacts with Arizona are not extensive, a "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Yahoo! Inc.*, 433 F.3d at 1210 (internal citation, quotation signals, and ellipses omitted). Menken has satisfied the first two prongs; the burden thus shifts to Tomerlin to show that the exercise of jurisdiction would not be reasonable.

## C. Reasonableness

We next balance the seven reasonableness factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and

effective relief; and (7) the existence of an alternative forum.

*CE Distrib.*, 380 F.3d at 1112 (citation omitted).

**[16]** First, Tomerlin argues there was no purposeful interjection because the dispute originated in Nevada, where Menken failed to satisfy the judgment against him, and that Tomerlin has no past or ongoing connection with Arizona. Menken disagrees and argues that the issue of whether Tomerlin has a valid Nevada judgment is not in dispute; rather, the genesis of the dispute is the action that Tomerlin took in Arizona: improperly demanding payment in excess of the judgment and tying up Menken's Arizona property in order to extract more than the amount of the Nevada judgment. Tomerlin's counsel sent several letters to Menken regarding the payoff amount after recording the judgment in Maricopa County, but it is unclear the extent to which these actions involve the "forum state's affairs." On balance, the extent of Tomerlin's purposeful interjection into Arizona's affairs is neither particularly great, nor *de minimis*. This factor appears to be neutral.

**[17]** Second, Tomerlin argues she would be unfairly burdened by having to defend against the case in Arizona because she does not regularly travel to Arizona, visiting once every three years, and that it would be inconvenient and expensive to litigate in Arizona. Menken argues that it is not especially burdensome because Arizona borders Nevada, Tomerlin's counsel was admitted pro hac vice to conduct a debtor's examination of Menken, and that modern technology and transportation mitigate any inconvenience to Tomerlin. Undoubtably, it would be more burdensome for Tomerlin to litigate in Arizona than in neighboring Nevada, where Tomerlin resides and has her principal place of business. "Nevertheless, with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *CE Dis-*

*trib.*, 380 F.3d at 1112. Although the inconvenience does not appear to be severely burdensome, this factor weighs slightly in favor of Tomerlin.

**[18]** Third, the parties agree that there is no conflict between Nevada and Arizona regarding sovereignty. This factor weighs in favor of Menken.

**[19]** Fourth, "Arizona has a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). This factor weighs in favor of Menken.

**[20]** The fifth factor concerns the efficiency of the forum. "In evaluating this factor, we have looked primarily at where the witnesses and the evidence are likely to be located." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Tomerlin argues that Nevada is more efficient because Tomerlin, her corporation, and attorneys are all Nevada residents so that most of the party witnesses are Nevada residents. Menken claims that all of the evidence and witnesses relating to his damages (regarding the loss of sale of his home) are in Arizona. Because witnesses are located in both Nevada and in Arizona, neither forum has a clear efficiency advantage with respect to witnesses. On the current record, it is difficult to definitively determine whether Arizona would be the most efficient forum for resolution of the dispute. On balance, this factor is neutral.

**[21]** The convenience and effectiveness of relief for the plaintiff comprise the sixth factor. "[I]n this circuit, the plaintiff's convenience is not of paramount importance." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir. 2002). Menken argues that Arizona may be the only forum that can hear his claim regarding a violation of the Arizona statute, A.R.S. § 33-420; therefore, he may not get effective relief in

another forum. Although this factor is not given much weight, it favors Menken.

**[22]** The seventh and final factor is availability of an alternate forum. Menken bears the burden of proving the unavailability of an alternative forum. *Core-Vent Corp.*, 11 F.3d at 1490. Menken argues that his fourth cause of action, a violation of A.R.S. § 33-420, can only be brought in Arizona. The statute reads in pertinent part:

> The owner or beneficial title holder of the real property may bring an action pursuant to this section *in the superior court in the county in which the real property is located for such relief as is required to immediately clear title to the real property* as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid.

A.R.S. § 33-420B (emphasis added). Assuming as true that Menken asserted a claim to quiet title under § 33-420B, then it appears there is no alternative forum for that portion of his Complaint.

**[23]** Weighing these seven considerations, the balance of factors does not favor Tomerlin. Tomerlin has not presented a compelling case that the exercise of jurisdiction would be unreasonable. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998) ("[W]e conclude that although some factors weigh in [defendant's] favor, he failed to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable."); *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) ("Neither party is clearly favored in the final balance. However, given the closeness of the factors, we conclude that [defendant] has not presented a 'compelling case' that exer-

cising jurisdiction over it would be unreasonable."). On balance, Tomerlin has not presented a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable.

[24] We wish to emphasize what we are not holding: the simple domestication of a foreign judgment in Arizona, standing alone, is unlikely sufficient to confer personal jurisdiction on the judgment creditor. Tomerlin allegedly did more, domesticating the judgment and then attempting to extract a greater payment than that lawfully due under the Nevada judgment. It is the alleged attempt to leverage a payment in excess of that lawfully due that confers specific jurisdiction over Tomerlin.

V.

[25] With respect to Menken's tort claims against Tomerlin, the district court had personal jurisdiction over Tomerlin. Accordingly, we REVERSE the district court's holding that it lacked personal jurisdiction over Tomerlin and REMAND for further proceedings consistent with this opinion.[5]

**REVERSED AND REMANDED.**

---

BYBEE, Circuit Judge, concurring in part and concurring in the judgment:

I fully agree with Judge Seabright's opinion with respect to the timeliness of Menken's appeal. I also concur in the majority's judgment with respect to personal jurisdiction: Menken

---

[5]Given our disposition on personal jurisdiction, we do not reach Menken's remaining issues on appeal, including his challenge to the denial of his motions to retain in rem jurisdiction and to amend the Complaint.

has alleged sufficient facts that, if true, show that Tomerlin " 'purposefully directed' [her] activities" at Menken in Arizona, and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). To my mind, that should end the inquiry.

I recognize that the Supreme Court has stated that "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,' " *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)), and that the Court has listed several considerations. These considerations, the Court said, "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required" and may also "defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Id.* at 477. We have virtually codified these considerations into seven numbered "reasonableness" factors. *See, e.g., CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1110 (9th Cir. 2004); *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003); *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995); *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). Judge Seabright's opinion faithfully considers each of these factors.

My objection is that we can take up these "reasonableness" factors only after we have already established that the defendant purposefully established minimum contacts with the forum, and that the contacts are related to the cause of action. I do not see how, having made this determination, the forum's exercise of personal jurisdiction over the defendant is subject

to defeasance just because we think that litigation in the forum might be burdensome to the defendant, or that there might be a more convenient forum, or that the forum might not have as great an interest in resolving the litigation as some other forum. None of these factors goes to the question of the forum's *power* over the defendant—the right to issue a judgment that is enforceable not only in the forum's own courts, but also in the courts of every other State. *See* U.S. CONST. art. IV, § 1 (Full Faith and Credit Clause).

These "reasonableness" factors are better suited to claims of *forum non conveniens*, which is also based on "considerations of convenience, fairness, and judicial economy." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1187 (2007).[1] *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). Indeed, the seven reasonableness factors parallel the private and public interests that a district court must weigh when considering a claim of *forum non conveniens. See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).[2]

---

[1]The only case in which the Supreme Court has held that these factors determined the question of personal jurisdiction was in a suit between two foreign corporations in which the Court divided evenly over whether the minimum contacts were sufficient. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987). The defendant might just as easily have invoked *forum non conveniens. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).

[2]Private factors in the *forum non conveniens* balancing test include: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508. Public factors include: "administrative difficulties from court conges-

I recognize that I am swimming against the tide, but I refuse to proceed without making my objections known. I respectfully concur in the opinion in part, and I fully concur in the judgment.

---

tion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co.*, 454 U.S. at 241 (quoting *Gulf Oil Corp.*, 330 U.S. at 509).