Filed 6/29/21  Rossa v. Blue Bird Body Co. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| DANIEL ROSSA, <br>      Plaintiff and Appellant, <br> v. <br> BLUE BIRD BODY COMPANY, <br>     Defendant and Respondent. | A160544 <br><br> (San Mateo County <br> Super. Ct. No. 18CIV05767) |

Plaintiff Daniel Rossa brought this products liability lawsuit for injuries he sustained in April 2018 when the electrical retracting steps of a library bookmobile owned and operated by his employer, the County of San Mateo, malfunctioned and crushed his foot, resulting in much of it having to be amputated.  One of the defendants is Respondent Blue Bird Body Company (Blue Bird), an out-of-state company that manufactured the vehicle, which another out-of-state company purchased and then converted from its original configuration as a bus into a bookmobile.  Blue Bird moved to quash service of summons for lack of personal jurisdiction, and the trial court granted the motion.  Rossa now appeals, contending that California may exercise specific jurisdiction over Blue Bird given the extent of its business dealings in this state with respect to the subject matter of this lawsuit.

1

We agree the court erred in granting the motion and conclude the matter must be remanded for further proceedings regarding Blue Bird's in-forum activities and amenability to suit in California.

## BACKGROUND

### A. The Motion to Quash

Blue Bird's motion to quash, filed on October 4, 2019, was supported by a declaration from an employee, Milo Ringe III, who is Blue Bird's Director of Government Specifications and Testing.

According to Ringe's declaration, Blue Bird is a company that manufactures, assembles and sells buses and has been doing business since 1927. It is incorporated in Georgia and has its principal place of business there. Blue Bird manufactured the bus involved in this case in Georgia, and sold it to a company located in Ohio called OBS, Inc., which then converted the bus into a bookmobile.[1]

Ringe stated that "[a]ll of Blue Bird's activity that was involved in regard to the design, manufacture, assembly and sale of the . . . bus took place in Georgia." He also stated that "[n]one of Blue Bird's conduct in regard to the subject bus took place in California."

Ringe acknowledged that Blue Bird "sells and delivers its buses to authorized dealers such as OBS, Inc." but stated that "[o]nce those buses are sold to a dealer, [Blue Bird] has no control over the modifications to those vehicles or where any vehicles are shipped, distributed, sold or re-sold."

With one limited exception, Ringe's declaration was silent as to whether, and to what extent, Blue Bird carries on business in California. His

---

[1] The vehicle did not have retractable steps installed when OBS bought it from Blue Bird. OBS also made other modifications, including changing the vehicle's door configuration.

sole reference to that subject was an assertion (which he would later acknowledge was inaccurate) that the company "does not have any employees or offices in California."

Instead of addressing Blue Bird's commercial presence in (or absence from) California, Ringe instead asserted only that the company "has never sold or advertised, and currently does not sell or advertise, any *bookmobiles* in California." (Italics added.) That fact, of course, was beside the point because Blue Bird is in the school bus business, not the bookmobile business. As Ringe himself stated, Blue Bird "does not design, manufacture or sell bookmobiles."

Plaintiff's counsel filed a written opposition to the motion that asserted there was evidence of Blue Bird's "purposeful contacts with California and causal relation" to Rossa's injuries. It argued that Blue Bird had carried on internet advertising, had California-based dealerships and service centers, and also had been involved with this very bookmobile after the vehicle had been delivered to the County of San Mateo, as reflected in some email correspondence. In the alternative, plaintiff requested a 90-day continuance to conduct further discovery into the jurisdictional issue.

Plaintiff's counsel filed a supporting declaration attaching two sets of materials: (a) a meet and confer letter he had sent to defense counsel, with enclosures he stated were materials he had obtained from Blue Bird's website, and (b) emails described as having been "received from the County of San Mateo in the ordinary course of business."

The materials from Blue Bird's website included promotional materials highlighting the quality of the company's buses and technical support network, the volume of its business and its nationwide scope. For example, one page, discussing the "Quality & Durability" of its buses, advertised that

3

"At Blue Bird, quality and durability have always been of paramount importance. *That is why over 180,000 of the buses that we've manufactured since our founding in 1927 are still on the road.* We pay attention to the details that deliver performance, continually exploring how a product can be improved." (Italics added.)

Another page, captioned "Serviceability," advertised the ease of performing maintenance and repairs on Blue Bird vehicles, touting the company's "superior technical training programs," "factory trained technicians," and its "expansive dealer & service network." It said the company "lead[s] the school bus industry in both quantity and quality of technical training offered to our customers," and that "over 335 dealerships and affiliated vehicle service centers are available throughout North America."

Still another page, captioned "Service and Parts," encouraged customers to "access important documents online" (including a driver's handbook, service manual and other technical references), advertised the company's "extensive selection of top-quality parts" and "well-stocked inventory," and encouraged customers to "[c]ontact your local Blue Bird dealer to get the parts you need, when you need them" from the company's "centrally located parts distribution center [that] boasts 1.3 million cubic feet of clean, orderly, highly automated space with over 20,000 part numbers to quickly fulfill your part needs."

At the very top of that page, captioned under the heading, "Get Service When You Need It," the company advertised the following: "At Blue Bird, we recognize that your new bus purchase is just one part of the equation. *The North American Blue Bird Dealer Network, backed by the knowledgeable Blue Birds Parts and Service Team, has you covered for the life of your bus. The*

4

*local parts, service, warranty, and genuine school bus expertise you need are readily available at hundreds of North American full-line dealers and dealer-authorized service centers."* (Italics added.) Included was a map depicting the company's network of dealers and authorized service centers all across North America, including throughout California:



**Get Service When You Need It**

At Blue Bird, we recognize that your new bus purchase is just one part of the equation. The North American Blue Bird Dealer Network, backed by the knowledgeable Blue Bird Parts and Service Team, has you covered for the life of your bus. The local parts, service, warranty, and genuine school bus expertise you need are readily available at hundreds of North American full-line dealers and dealer-authorized service centers.

**Access Important Documents Online**

Access the current Driver Handbook, Service Manual and other technical references online at Blue Bird Vantage™- our online portal! You can access the website at:

*vantage.blue-bird.com*



Another page, from the "Dealer/Service Center Locator" portion of the company's website, reflected the results of a search conducted within 200 miles of Sacramento County, depicting at least 10 locations in that area of California alone:





The website also actively solicited business. It allowed visitors to "request a quote," encouraged them to join the company's mailing list to receive "the latest updates and promotions," and included links to a variety of other topics, including product information, information about financing and "purchasing a bus," "find[ing] a service center," warranty information, "FAQs," and "do[ing] business with Blue Bird."

In addition to these website materials, the ten pages of email correspondence attached to the declaration of plaintiff's counsel included materials that appear to reflect discussions between San Mateo County personnel and various outside service technicians about warranty repairs made to the bookmobile in the December 2011/January 2012 timeframe. Several of these communications refer to Blue Bird's involvement, both from outside of California and within the state.[2]

---

[2] It began on December 14, 2011, when service personnel from an entity called "Cummins West" in San Leandro (which is apparently affiliated with another named defendant, Cummins Pacific, LLC) responded to reports by a supervisor at a company called Belmont Motor Pool, Abdul "Shamim" Khan, about problems with the bookmobile. The Cummins West employee advised Khan to "See if you can get Blue Bird out there to look at this . . . . [¶] If it is a Cummins Warrantable repair and it is not drivable, Cummins will pay for the tow within the first year. Otherwise it is customer billable." The next day, December 15, Khan reported to San Mateo County's vehicle and equipment manager, Tony Hardwood, "FYI. [¶] The Bookmobile broke down again and have contacted Blue Bird. They are looking into it."

A couple of weeks later, on December 30, Khan gave Hardwood an update: "The service manager at Blue Bird in Canton, OH told me that he was going to contact somebody in Colton, CA and have them come out to look at the bus. They think that it might be a Blue Bird software problem. I did not receive any calls, so I called Canton Blue Bird and was told that the service manager was on vacation till next week. [¶] I called Blue Bird in Colton and spoke to Fay and was told that no one from Canton had contacted them. She told me that since they were too far from us, she will look for somebody in our area who could help us but it will not be till next Tuesday or Wednesday. [¶] . . . [¶] I will contact the service manager in Canton, OH again on Tuesday." [see next page]

Several weeks later, on January 19, Khan updated Hardwood again: "As per Bob Ferne (owner of OBS, Blue Bird dealer, where the Book Mobile was purchased from) the Blue Bird factory reps are communicating with Cummings. He will call me as soon as he gets an answer. [¶] I was told there are other Blue Bird buses out there, including Monterey county's bus with similar problems." Then a week later, on January 27, another update from Khan: "Blue Bird Ca rep, John Vaugh just informed me that he will be going

7

Blue Bird filed written objections to the declaration of plaintiff's counsel and its attachments, on numerous grounds.

Ringe filed a supplemental declaration with Blue Bird's reply papers. He acknowledged that "there are service centers and dealers authorized by Blue Bird in many states, including California." However, he asserted they "are separate and independent companies," and reiterated, as previously stated, that "Blue Bird does not have any facilities in California." Ringe also made a retraction: he acknowledged that an email included with the opposition papers "indicated someone spoke to 'John Vaugh' and referred to him as a 'Blue Bird Ca rep.,' " and corrected his prior statement that Blue Bird does not have any employees located in California. Ringe stated that Blue Bird has three employees in California, including one named John Vaughn.

The matter proceeded to a hearing on November 22, 2019, and the trial court continued it for three months, until February 20, 2020, to enable plaintiff to conduct jurisdictional discovery.

Plaintiff got nowhere. After completing the deposition of a county fact witness that had been previously scheduled and then got delayed for reasons beyond plaintiff's control, plaintiff's counsel (on December 17) asked defense counsel to stipulate to a 30-day continuance of the motion to quash hearing and to propose a suitable pre-hearing briefing schedule to allow for the

---

to Cummins West on Monday to look at our Book Mobile. He also said that he will be bringing a part with him that will probably fix the problem."

A few months later, Hardwood followed up with OBS about sorting out reimbursements for the "warranty repairs" that had been performed, and on April 20, an OBS employee responded by telling Hardwood, "I'm currently working with Blue Bird regarding the tow bills in question. I will also get with our accounts payable and promptly send payment."

submission of additional evidence, but defense counsel did not respond. Plaintiff's counsel then, in early January 2020, propounded written discovery requests on Blue Bird aimed at disclosing the extent of Blue Bird's business dealings in California (described *post,* pp. 9-10). A few days before Blue Bird's responses were due, defense counsel claimed (on February 4) he never received plaintiff's earlier mail asking for a continuance of the hearing but he still did not accede, contending plaintiff's outstanding discovery requests were irrelevant (they "do[] not address the legal issues relating to general and/or specific jurisdiction pursuant to the current state of the law," and "do[] not relate to any conduct giving rise to the controversy that relates to any alleged contact with the forum"), and he insisted Blue Bird would oppose any request for additional time to oppose its motion to quash.

When Blue Bird answered the discovery requests a few days later, it responded with the proverbial stone wall. For example, plaintiff asked Blue Bird:

- to describe its business relationship with the dealers and service centers in California that "use the name 'Blue Bird' or its variations";

- whether its employees "provide[d] warranty service" to the bookmobile (and if so, to provide details);

- to produce documents reflecting its business dealings with an entity called A-Z Bus Sales, Inc. in Sacramento, California, which appears to be affiliated with a co-defendant, "A2Z";

- to admit that it "sells vehicles, including vehicle components, through businesses you make efforts to use for that purpose in California";

- to admit that it "makes efforts to respond with [its] employed personnel to sites in California to perform warranty obligations"; and

9

- to admit that it had initiated litigation as a plaintiff in California Superior Court in the past ten years.

In response, Blue Bird interposed lengthy relevance objections to all of these requests, construed several of them narrowly so as to avoid a direct answer,[3] and danced around several to the point of absurdity.[4] It objected to many of these requests that were plainly relevant to the jurisdictional issues, claiming any responsive facts would not be sufficient to satisfy the legal standards governing general and special jurisdiction.

Having run out of time to set a hearing on a motion to compel further responses prior to the continued hearing on jurisdiction, Plaintiff's counsel moved ex parte to have a motion to compel heard on shortened time and the hearing continued. Plaintiff explained that Blue Bird failed to respond to discovery principally based on a "direct causation" theory of specific jurisdiction that had never before been recognized, was not the law, and indeed was currently pending before the United States Supreme Court.

As it had threated to do, Blue Bird opposed the ex parte motion, principally on the ground the discovery was "based on antiquated and/or erroneous interpretations of law regarding jurisdiction" and therefore

---

[3] For example, on the subject of authorized dealers and service centers, Blue Bird stated that it did not know of any dealerships or authorized service centers in California that "use the name 'Blue Bird' *in their name*" (italics added) and otherwise objected on the grounds of relevance, vagueness and ambiguity.

[4] On the subject of "warranty service" performed on the bookmobile, it responded to one interrogatory as follows: "to its knowledge, none of its employees provided 'warranty service' to the subject vehicle as it understands the term 'service.' Blue Bird understands 'service' to mean maintenance procedures carried out at a set time interval or after the vehicle has traveled a certain distance. Service intervals are generally specified by the service schedule in the applicable operator's and/or service manual(s)."

irrelevant. It argued "there is no basis for specific or 'conduct-linked' jurisdiction in this case *because this lawsuit does not arise out of any conduct by Blue Bird in California or that Blue Bird intentionally directed at California.*" The ex parte judge denied plaintiff's motion for lack of good cause. The order also noted that the local court rules require a party to advise the court at least 3 court days ahead of time if a matter is to be taken off calendar. But plaintiff's counsel was told he could address the court at the continued hearing to ask for more time.

At the continued hearing on February 20, 2020, plaintiff's counsel tried to submit further papers in opposition to Blue Bird's motion to quash, but the court ruled the papers were untimely and declined to accept them, and they are not in the record. Plaintiff's counsel also raised the issue of Blue Bird's inadequate discovery responses, and Blue Bird argued that plaintiff had squandered his time. The court declined to entertain the prospect of a continuance because plaintiff's counsel had not apprised the court earlier, when he began encountering discovery delays, that he would need more time. Plaintiff's counsel tried to make a record about the supplemental papers he wanted to file, and the court threatened him with contempt of court if he spoke "one more word."

The court then adopted its tentative ruling granting Blue Bird's motion to quash. The court noted it was undisputed that Blue Bird is not subject to general jurisdiction and made a finding that Blue Bird has "no physical presence in California, no assets, no personnel, and no regular contacts" with California.

The court also ruled there was no basis to exercise specific jurisdiction. In full, it reasoned: "Plaintiff fails to demonstrate any acts by Blue Bird that constitute purposefully establishing contacts with California. Further, since

11

Blue Bird has no contacts with the state, the Plaintiff has not shown that his claim arises out of or is related to such contacts. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 477-478.) The emails attached to Plaintiff's opposing declaration are not authenticated. However, even if the emails were admitted into evidence, they do not show that Blue Bird had purposeful contacts with California."

The ruling also denied plaintiff's request for more time to conduct discovery, because plaintiff "has not shown that discovery will likely produce evidence of additional 'contacts' to justify subjecting Blue Bird to general or specific jurisdiction."

This appeal followed.[5]

## DISCUSSION

"In reviewing a trial court's determination of jurisdiction, we will not disturb the court's factual determinations 'if supported by substantial evidence.' [Citation.] 'When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record.' " (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273.)

It has long been the law that a state may exercise specific jurisdiction over an out-of-state defendant "if the defendant has 'purposefully directed' his activities at residents of the forum [citation], and the litigation results from alleged injuries that 'arise out of or relate to' those activities." (*Burger*

---

[5] We previously notified the parties we were considering dismissing this appeal as untimely and directed them to provide letter briefs addressing that subject. Appellant's letter briefing alluded to the fact that the superior court issued emergency pandemic-related orders that bear on this issue. Having located and analyzed those orders, we have concluded, for reasons that are unnecessary to discuss, that the appeal is timely.

*King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472 (*Burger King*).) Here, the trial court concluded that the purposeful availment prong was not satisfied, and for that reason neither was the arise-out-of-or-relate-to requirement. In effect, the trial court did not reach the latter prong because its decision on the purposeful availment prong mooted the question.

Rossa fails to address these two requirements specifically or explain why the trial court erred. He contends the trial court "adopted an incorrect and restrictive limitation on the definition of 'minimum contacts' which should warrant specific jurisdiction." He argues that under *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, "[']specific jurisdiction may lie over a foreign defendant that places a product into the "stream of commerce" while designing . . . advertising . . . establishing channels for regular advice' or [']marketing through a distributor who has agreed to act as a sales agent in the forum state.['] " He points out that Blue Bird has employees, authorized service centers and dealers in California, and that the claim against Blue Bird is not directed at the bus's current configuration as a bookmobile but rather at components of that vehicle made by Blue Bird. Finally, Rossa contends the trial court erred in not permitting further discovery before ruling on the motion to quash in light of Blue Bird's "complete failure . . . to respond to discovery."

Blue Bird does address the requirements for personal jurisdiction, but makes no attempt to defend the court's conclusion that the "purposeful availment" prong was not met. We could take that as a concession and simply proceed to the relatedness prong. (See *Bader v. Avon Products, Inc.* (2020) 55 Cal.App.5th 186, 193 [where respondent challenges only the relatedness prong of specific jurisdiction analysis on appeal, appellate court accepts that limitation and addresses only that issue].) But because we will

be remanding this matter, we hold that this prong is satisfied. Blue Bird's silence on this subject is appropriate, because the court's conclusion that "Plaintiff fail[ed] to demonstrate any acts by Blue Bird that constitute purposefully establishing contacts with California" cannot be squared with the record.

The "purposeful availment" prong is met "where the defendant 'deliberately' has engaged in significant activities within a State [citation], or has created 'continuing obligations' between himself and residents of the forum." (*Burger King, supra,* 471 U.S. at pp. 475-476.) In either situation, the defendant "manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (*Id.* at p. 476.)

Even on this thinnest of records (thin in large part because of *Blue Bird*'s evasive responses to discovery), it is evident that Blue Bird has a significant and deliberate commercial presence in California. To begin with, the court erred in finding that Blue Bird has "no personnel" in California. Indeed, it was ultimately undisputed in the trial court that Blue Bird has three employees in California, including one who, by all accounts, appears to have been involved in repairing the very vehicle at issue here.[6] In addition,

---

[6] We consider all of the evidence plaintiff submitted with his opposition papers (i.e., the emails and website materials) because Blue Bird did not request a ruling on its evidentiary objections and, apart from the court's reference to the unauthenticated nature of the emails, the court did not rule on the objections. Furthermore, despite noting the unauthenticated nature of the emails, the trial court nonetheless considered their content. Thus, Blue Bird's evidentiary objections have been forfeited. (See, e.g., *Zhi An Wang v. Fang* (2021) 59 Cal.App.5th 907, 915, fn. 6.)

14

the website materials that plaintiff proffered clearly demonstrate Blue Bird's deliberate efforts to exploit the market for buses in California. It does so through a wide variety of means, most significantly through relationships with authorized dealers and service centers located in California, advertising, a training program offered nationally, a centralized inventory of parts made nationally available, as well as an interactive website that enables and encourages potential customers anywhere, including in California, to "request a quote using our interactive tool" and to sign up for marketing and promotional material. Moreover, the only reasonable inference from the undisputed fact that there are numerous "authorized" Blue Bird dealers and service centers in California is that such commercial arrangements are the result of legal contracts negotiated and entered into by Blue Bird with those independent companies in California. For these reasons, Blue Bird's tacit concession that the "purposeful availment" prong was established is appropriate.[7] Simply put, despite the fact Blue Bird prevented discovery into

---

[7] See, e.g., *Burger King, supra,* 471 U.S. at pp. 480-481, 487 (defendant purposely availed itself of Florida forum by entering into franchise agreement with corporation headquartered in Florida that created a "substantial and continuing relationship" between the two); *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement* (1945) 326 U.S. 310 (regular and systematic solicitation of business by 13 in-state salesman held sufficient to establish minimum contacts with forum); *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664, 671 (out-of-state manufacturer made purposeful " ' efforts . . . to serve . . . the market for its product' " by, inter alia, sending employee to assist California business with installation of its product, sending spare parts, advising on maintenance and advertising nationally); *Buckeye Boiler Co. v. Superior Court of Los Angeles County* (1969) 71 Cal.2d 893, 902-903 ("indirect" distribution of product to forum through middlemen and independently owned dealerships " 'effect[s] little, if any, alternation in the jurisdictional situation' "); *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 559 (foreign supplier

15

its sales activity in California (and we do not know the extent of its sales volume in California or the amount of revenue it derives from California), "the 'quality and nature' " of Blue Bird's relationship to the California vehicle market "can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.' " (*Burger King*, *supra*, 471 U.S. at p. 480.)

We therefore turn to the only basis upon which Blue Bird does defend the trial court's ruling, which is the contention plaintiff "did not and cannot establish that his claim arises out of any forum-related conduct of Blue Bird." As it did below, Blue Bird asserts that this is so because it manufactured the bus out-of-state, sold it to an out-of-state third party (OBS, which modified the vehicle into a bookmobile), and had no control over the modifications or the vehicle's resale to a California buyer.

While this appeal was pending, the United States Supreme Court decided *Ford Motor Co. v. Montana Eighth Judicial District Court* (2021) __U.S.__ [141 S.Ct. 1017] (*Ford Motor Co.*), which definitively repudiated this narrow view of the nexus required to establish specific jurisdiction. *Ford Motor Co.* clarified that when a company "serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit" (*id.* at p. 1022), regardless whether the *specific* product that caused injury was manufactured, designed and purchased elsewhere and the defendant had no role in the product making its way into the state. (See also *Trimble Inc. v. PerDiemCo LLC* (Fed. Cir., May 12, 2021) 997 F.3d 1147, 1156 [*Ford Motor Co.* "established that a broad set of a defendant's contacts with a forum are relevant to the minimum contacts analysis" and "emphasized that a defendant's contacts 'must show

"purposefully directed its activities toward California businesses when it repeatedly sold its products to various California distributors").

16

that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there' "].)

At issue in *Ford Motor Co.* was whether an out-of-state car manufacturer, Ford, was subject to two products liability suits by state residents for accidents occurring in their states, even though the particular cars involved in the accidents had been designed, manufactured and originally purchased out of state, and only later made their way into the two states though resales and consumer relocations. (See *Ford Motor Co., supra,* 141 S.Ct. at pp. 1022-1023.) *Ford Motor Co.* conceded it purposefully availed itself of the two forums by conducting substantial business in both states for automobiles and related products (see *id.* at p. 1026), and the Supreme Court indicated the concession was appropriate given the extent of its business dealings in those states (through advertising, sales, repair services and the distribution of replacement parts to Ford dealers and independent shops alike) (see *id.* at p. 1028). But Ford contended its conduct was not sufficiently related to the two suits, because its conduct in the forum did not give rise to the suits. On Ford's view, specific jurisdiction could attach only in the states where it had designed or manufactured the cars, or in the states where it had sold the two vehicles involved in the accidents. (*Id.* at p. 1026.)

The Supreme Court rejected that "causal" view of specific jurisdiction and said "Ford's "causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." (*Ford Motor Co., supra,* 141 S.Ct. at p. 1026; see also *id.* at p. 1033 [concurring opn. of Alito, J.] [rejecting Ford's "unprecedented rule under which a defendant's contacts with the forum State must be proven to have been a but-for cause of the tort plaintiff's injury"]; *id.* at p. 1039

17

[concurring opn. of Gorsuch, J.] ["The parties have not pointed to anything in the Constitution's original meaning or its history that might allow Ford to evade answering the plaintiffs' claims in [their chosen forums]"].)

*Ford Motor Co.* explained: "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.' [Citation.] *The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing*. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct. [Citation.] So the case is not over even if, as Ford argues, a causal test would put jurisdiction in only the States of first sale, manufacture, and design. A different State's courts may yet have jurisdiction, because of another 'activity [or] occurrence' involving the defendant that takes place in the State. [Citation.] [¶] And indeed, this Court has stated that specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there." (*Ford Motor Co., supra,* 141 S.Ct. at pp. 1026-1027, italics added, fn. omitted; see also *id.* at pp. 1027-1028 [discussing *World-Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. 286 and its progeny].)[8]

---

[8] In the view of three concurring Justices, the majority's analysis injects new doctrinal confusion (by treating the "arising out of or relating to"

Under *Ford Motor Co.*, the location of injury matters (see *Ford Motor Co., supra,* 141 S.Ct. at pp. 1026, 1027, fn. 3, 1030), as does the nature and extent of the defendant's commercial presence in the forum (see *id.* at pp. 1028-1030). Citing and extensively discussing prior precedent, *Ford Motor Co.* reaffirmed the rule that "when a corporation has 'continuously and deliberately exploited [a State's] market, it must reasonably anticipate being haled into [that State's] court[s]' to defend actions 'based on' products causing injury there." (*Id.* at p. 1027.) The Court cautioned that not "any person using any means to sell any good in a State is subject to jurisdiction there if the product malfunctions after arrival," because "isolated or sporadic transactions" are treated differently for jurisdictional purposes than "continuous" ones. (*Id.* at p. 1028, fn. 4.) But it concluded that because Ford had "systematically served a market" in two states for the same model of vehicles that two plaintiffs claimed caused injury to them in those states (by extensively promoting, selling and servicing those types of cars in those two states), the connection between the plaintiff's claims and the manufacturer's in-state activities was sufficiently close to support the exercise of jurisdiction even though, like here, the defendant had sold the *particular* vehicles involved elsewhere. (See *id.* at pp. 1028, 1032.)

*Ford Motor Co.* did not purport to change the law. The court unanimously rejected Ford's causation-based view of specific jurisdiction, and unanimously agreed Ford was subject to suit given the extent of its business dealings in both states. But it did resolve confusion among lower state and

---

prong as two separate categories, either one of which suffices to satisfy prong two). (See *Ford Motor Co., supra,* 141 S.Ct. at pp. 1033-1034 [concurring opn. of Alito, J.]; *id.* at pp. 1034-1039 [concurring opn. of Gorsuch, J.].)

federal courts about the nexus required to establish specific jurisdiction.[9] And, importantly, in doing so it repudiated the "causation" test of jurisdiction that Blue Bird expressly invoked below, and also distinguished two of the principal precedents that Blue Bird has relied upon in the trial court and this court in both contending it cannot be subject to suit in California given the out-of-state provenance of the vehicle involved here,[10] and in resisting plaintiff's jurisdictional discovery. (See *Ford Motor Co., supra,* 141 S.Ct. at pp. 1030-1032 [discussing *Bristol-Myers Squibb Co. v. Superior Court* (2017) __U.S. __ [137 S.Ct. 1773] and *Walden v. Fiore* (2014) 571 U.S. 277].)

---

[9] Prior to *Ford Motor Co.*, courts "wrestled with the nexus requirement of specific jurisdiction in a variety of factual settings and . . . reached diverse conclusions as to the appropriate test for determining the proper nexus between the nonresident defendant's business activity and the claim asserted by the plaintiff. The tests adopted range from narrow or strict causation-based tests to more flexible relatedness tests requiring the showing of some connection or relationship between the claim and the business activity." (*Shoppers Food Warehouse v. Moreno* (D.C. Ct. App. 2000) 746 A.2d 320, 333 [en banc].) Compare, e.g., *Bandemer v. Ford Motor Co.* (Minn. 2019) 931 N.W.2d 744, 753 ["the requirements of due process are met so long as [defendant's forum] contacts *relate to* the claim"; such contacts need not "*cause* the claim"] and *Avocent Huntsville Corp. v. Aten Int'l Co. Ltd.* (Fed. Cir. 2008) 552 F.3d 1324, 1337 [arise-out-of-or-relate-to prong "is far more permissive than either the 'proximate cause' or the 'but for' analyses"] with *Menken v. Emm* (9th Cir. 2007) 503 F.3d 1050, 1058 [plaintiff must "show that he would not have suffered an injury 'but for' [defendant's] forum-related conduct"]; *Waite v. All Acquisition Corp.* (11th Cir. 2018) 901 F.3d 1307, 1313-1314 [defendant's forum contacts "must be a but-for cause of the torts"].)

[10] For example, in the trial court Blue Bird argued that under *Bristol-Myers*, "a plaintiff must establish a direct causal connection between the alleged injuries and the defendant's activities in state," and "[t]here is no connection here since all of the relevant conduct of Blue Bird occurred in Georgia, but nothing occurred in California."

It is unnecessary to analyze those other cases in depth, or the specific facts of *Ford Motor Co.* at great length, or to assess the extent to which the decision controls the outcome here. Although there appear to be many similarities, the parties and the trial court did not have the benefit of *Ford Motor* when the jurisdictional issue was litigated and decided below. A remand for further proceedings in light of the Supreme Court's decision therefore is appropriate so that jurisdictional discovery can be conducted in light of that decision, additional evidence presented, and a new hearing held. (See Code Civ. Proc., § 909 [appellate court may "for any purpose in the interests of justice, . . . give or direct the entry of any judgment or order and may make any further or other order as the case may require"].)

## DISPOSITION

The order granting Blue Bird's motion to quash service of summons is vacated and the matter is remanded for further proceedings, including appropriate discovery, consistent with this opinion. Appellant shall recover his costs.

_____
STEWART, J.

We concur.

_____
RICHMAN, Acting P.J.

_____
MILLER, J.

*Rossa v. Blue Bird Body Company* (A160544)